# Richmond

## STUART MOORE, TRUSTEE IN BANKRUPTCY OF H. A. DONALD AND COMPANY, INC., BANKRUPT, v. AETNA CASUALTY AND SURETY COMPANY.

November 13, 1930.

Present, Prentis, C. J., and Holt, Epes, Gregory and Browning, JJ.

*A. Willis Robertson, John Dabney Smith* and *J. M. Perry,* for the appellant.

*Hugh A. White* and *W. Braxton Dew,* for the appellee.

PRENTIS, C. J., delivered the opinion of the court.

The arguments in this case are elaborate. There are discussions of controverted questions of fact, which, in view of the evidence, the conclusions of the master thereon and the decree of the court must be regarded as settled; and legal questions are raised and discussed which have been long ago determined. We shall not undertake to follow counsel in these divagations, but shall confine ourselves to those facts which we deem controlling, and to a statement of the resulting conclusions.

H. A. Donald and Company, Inc., so far as this record shows, was engaged chiefly in building roads and bridges for the State Highway Department. Only three persons had any interest in the corporation. Leo G. Sheridan, vice-president and treasurer, was the owner of 100 shares of stock; H. A. Donald, president, was owner of 100 shares, and James G. Allen, secretary and assistant treasurer, was the owner of fifty shares. Of the fifty shares owned by Allen, which had been transferred to him by Sheridan, forty-nine shares had been, simultaneously with that transfer, hypothecated by Allen to Sheridan as collateral security for the payment of the entire purchase money for the fifty shares.

In March, 1923, the Virginia State Highway Commission awarded to the Donald Company contracts for the construction of 11.7 miles of macadam highway, between Fairfield, Rockbridge county, and Greenville, Augusta county, designated as Project 192-C, and for the construction of three concrete bridges over Christian's creek, South river and Marl creek, in Rockbridge and Augusta counties. Allen, without being expressly or formally authorized by any recorded resolution, signed, in the name of the corporation, as secretary thereof, acknowledged before a notary and delivered two instruments, each designated "Application for Contract Bond," to the appellee, Aetna Casualty and Surety Company, applying to, or requesting, the

Aetna Company to become surety (for specified premium or charge) of the Donald Company upon its bond to the Highway Commission for the faithful performance of these contracts, and he affixed thereto the seal of the Donald Company. These applications were made upon forms supplied by the Aetna Company, which contained numerous provisions printed in less than 10 point type. The particular application directly involved here, for bond covering the contract for the construction of 11.7 miles of highway in Rockbridge and Augusta counties, Project 192-C, covering about twelve pages of the printed record, is printed in full three times in the record. The clause designated as "Eighth" of this paper is the only part of it which is involved in this controversy. That clause reads:

"Eighth; that for the better protection of the company, and in further consideration of the execution of the bond herein referred to, the undersigned, as of the date hereof, hereby sells, assigns, transfers and conveys to the company, all the right, title and interest of the undersigned in and to all the tools, plant, equipment and materials of every nature and description that the undersigned may now or hereafter have upon the work, or in or about the site thereof, including, as well, materials purchased for or chargeable to said contract, which may be in process of construction, on storage elsewhere, or in transportation to said site, and authorizes and impowers the company, its authorized agents or attorneys, to enter upon and take possession of said tools, plant, equipment and material, and enforce and enjoy such possession at any time for its own special use and benefit upon the following conditions, viz:

"This sale, transfer and assignment shall be and remain in full force and effect until the final completion of the contract, and of any other contract covered by a bond of the company given for the undersigned, or at the request

of the undersigned, and until the final settlement of all matters growing out of such contract; and the company shall, in the event of any loss or default, have full right to sell and convey the whole or any part of the property, thereby sold and assigned to make good any loss or expense incurred or to be incurred by it by reason of the execution of the bond herein referred to or any other bond given for or at the request of the undersigned, * * *."

The precise portions of the clause to be construed are those which assign and transfer to the Aetna Company the tools, plant, equipment and materials used upon the work, or in and about the site, etc., and provide that the Aetna Company, in the event of any loss and default, shall have the right to sell or convey the whole or any part of the property so sold and assigned for the purpose of making good any loss sustained or expense incurred growing out of the execution of the contractor's bond as surety.

This application is dated March 23, 1923, and on March 26, 1923, Sheridan, Donald and Allen executed and delivered their personal bond further indemnifying the Aetna Company as surety for the Donald Company on this bond.

The State Highway Commission having awarded the contract to the Donald Company, the Aetna Company executed the surety bond in response to the application. This surety bond was signed H. A. Donald and Company, Inc., by H. A. Donald, president, Leo G. Sheridan, treasurer, and Jas. G. Allen, secretary.

The work under the contract was commenced by the Donald Company, and continued until late in December, 1923, when the Donald Company became insolvent; and on December 27, 1923, H. A. Donald, as president, wrote thus to the Aetna Company:

"Since talking to you in regard to the situation of H. A. Donald Company, Inc., for whom your company is surety in its contract for road construction and bridge construction

on Virginia State Highway Projects F 169-B and F 192-C, we are convinced that owing to the defalcation of the treasurer of this company, there will be no practical way for this company ·to complete its contracts. This we greatly regret. For technical reasons it is probably not feasible for us to throw up our contracts at this time and declare the same forfeited. But, since the actual work on Project F 169-B is completed, and the time limit of the contract for Project F 192-C expires December 30, 1923, we would suggest that on December 31st, as a matter of law, you declare that the work is in default and that your company be prepared to take the work over on that date. This will eliminate any controversy over the ownership of stock that you thought might arise.

"This situation has arisen through the defalcation of our treasurer so we want you to feel that the signers of this letter wish in every way to co-operate with your company on the friendliest terms, so that the loss shall be as small as possible."

This letter is signed "H. A. Donald & Co., Inc., by H. A. Donald, President, James G. Allen, Secretary."

In the meantime, Leo G. Sheridan, treasurer, who was also cashier of the Bank of Lexington, had been charged with crime in connection with his duties as cashier, and in January, 1924, had been convicted and sentenced to imprisonment. The Aetna Company, in response to that letter, took possession of the personal property and supplies of the Donald Company, which had been theretofore used upon the work, completed it, incurred a very large loss in so doing, and claimed a lien therefor upon the equipment, with the right to sell it, under the assignment contained in clause 8 of the application heretofore quoted.

Thereafter, on April 9, 1924, a petition in bankruptcy was filed against Donald and Co., Inc., which was on April 30, 1924, declared bankrupt.

The application under which the Aetna Company claimed to be entitled to its lien had been admitted to record December 13, 1923.

The appellant was appointed special receiver October 9, 1924, and trustee December 18, 1924.

The petition for appeal alleges: "Your petitioner was duly appointed and qualified as and became temporary receiver in bankruptcy of the estate of the Donald Corporation on October 9, 1924, and learning that the Aetna Company had possession and was claiming to be the owner of the tools, machinery, plant and equipment comprising the assets of the Donald Corporation and was undertaking and preparing to sell and dispose of the same, and a controversy having arisen between your petitioner, as such temporary receiver, and the Aetna Company with respect thereof, the Aetna Company executed by and through its proper and duly authorized agent, and under its corporate seal, and delivered to your petitioner, as such temporary receiver, its bond, with security, and containing the following recitals, conditions and stipulations:

" 'Whereas, the said Stuart Moore, temporary receiver, has made demand upon the said Aetna Casualty and Surety Company for surrender and delivery to him of the property of the said H. A. Donald and Company now or heretofore in the possession of the said Aetna Casualty and Surety Company; and, whereas, the said Aetna Casualty and Surety Company desires to retain possession, for the time being, of such property of the said H. A. Donald and Company; now, therefore, if the said Aetna Casualty and Surety Company shall have the said property of H. A. Donald & Company, including the specific articles embraced in a list and inventory filed herewith as a part of this instrument, as well as any other of the property of the said H. A. Donald & Company, which may be in the possession of the said Aetna Casualty and Surety Company

forthcoming at such time and place as the court may require or in lieu thereof its equivalent in lawful money as determined by the fair cash value of such property or article, then the above obligation to be void; otherwise to remain in full force and virtue.' "

The machinery, tools, plant and equipment were sold by the Aetna Company under its claim.

On June 2, 1927, more than two years thereafter, the trustee was given authority to institute suits on behalf of the bankrupt's estate, in either the State or Federal courts. Then, on November 15, 1927, he filed his bill against the Aetna Company, claiming title to the personal property which had formerly belonged to the Donald Company, which had been sold by the Aetna Company, the proceeds of which had been applied on the debt due to it by the Donald Company. He alleged that the writing was invalid and void, not executed by the Donald Company, and made other allegations not now pertinent. The defendant, the Aetna Company, answered, claiming a lien upon the property superior to the rights of the trustee or the creditors of the bankrupt, and alleging that it had suffered a net loss growing out of these transactions of $42,826.91.

The court, upon the issues raised, referred the case to a master commissioner, directing the following inquiries:

"1. Whether the alleged assignment mentioned in the plaintiff's bill, purporting to have been executed by H. A. Donald & Co., Inc., to Aetna Casualty and Surety Co., of Hartford, Conn., bearing date of March 22, 1923, is a valid instrument, and the act and deed of the said H. A. Donald Co., Inc.

"2. Whether the said H. A. Donald & Co., Inc., within four months before the 9th day of April, 1924, and being then insolvent, made a transfer and assignment of any of its property and estate to Aetna Casualty and Surety Co.,

of Hartford, Conn., and if so, the nature and value thereof; and (a) whether the said Aetna Casualty and Surety Co., of Hartford, Conn., had then reasonable cause to believe that the said H. A. Donald & Co., Inc., was then insolvent, and that the effect of such a transfer or assignment would be to enable Aetna Casualty and Surety Co., of Hartford, Conn., as a creditor of H. A. Donald & Co., Inc., to obtain a greater percentage of its debt than any other such creditor of the same class; (b) whether the said assignment did so operate and have that effect.

"3. What, if any, property, estate, goods, chattels, moneys and effects of or belonging to H. A. Donald & Co., Inc., or to which it was or may or might have been entitled, or to which it afterwards became entitled, have gone into the hands or possession or under the control of the Aetna Casualty and Surety Co., of Hartford, Conn., and the value and amount thereof, and what disposal the said Aetna Casualty and Surety Co., of Hartford, Conn., has made thereof.

"4. Any other account, matter or thing which may or shall be deemed pertinent or proper by the said Commissioner or with respect whereof he may or shall be requested to report to the court by any party interested."

Testimony was taken by the commissioner, who made a full and careful report upon the facts. He concluded that James G. Allen had authority, direct or implied, to execute the assignment, and that, if there were any doubt about this, his act had been subsequently ratified by the company. He expressed his opinion upon every other point in the case adversely to the contentions of the trustee.

The trustee filed exceptions to this report, all of which were overruled, and there was a final decree in favor of the Aetna Company. The correctness of this decree is here challenged by the trustee in bankruptcy.

■ 1. The first error assigned is that the court erred in holding that Allen had authority, direct or implied, to

execute the paper for the Donald Company, or that his act in so doing had been subsequently ratified by the Donald Company. It is claimed, on the contrary, that the testimony taken before the commissioner and filed with his report is wholly inadequate and insufficient to establish the fact that J. G. Allen had such express or implied authority, or that his act had been subsequently ratified by the Donald Corporation.

We do not think it necessary to recite the testimony in detail. It is sufficient to say that both Donald and Allen testified that the three persons who constituted the officers, the board of directors and the stockholders of the Donald Company did expressly authorize Allen to sign the application. Sheridan denied that he had ever expressly authorized him to do so. If this were all, it would simply present a conflict in the evidence and the conclusion of the commissioner, approved by the trial judge, would not be disturbed here. *Cottrell* v. *Matthews*, 120 Va. 847, 92 S. E. 808; *Va. L. & E. Co.* v. *McHenry L. Co.*, 122 Va. 111, 94 S. E. 173; *Ingram* v. *Ingram*, 130 Va. 334, 107 S. E. 653, 26 A. L. R. 1175.

If not expressly it was impliedly authorized, because they all three must be held to have known that the Aetna Company would not become surety upon the bond without such an assignment.

If neither expressly nor impliedly authorized, it was certainly ratified, for the Donald Company and all three of its officials, who were also all of its directors and stockholders, signed the bond upon which the Aetna Company was induced to become surety only in consequence of this application, and the Donald Company undertook to perform the contract and collect the compensation therefor, and with the knowledge and participation of all three continued to do so for several months until December, 1923.

The case of *Winston* v. *Gordon*, 115 Va. 907, 80 S. E. 756, 760, is quite apposite: "It is well settled and is

agreeable to reason, that an act of an agent, from which the agent derives no personal benefit, but which is done in good faith for the benefit of his principal, and which was apparently necessary and would redound to his advantage, will be held to have been ratified or acquiesced in and be thereby rendered valid upon slight evidence. If the principal knows that the agent has transcended his authority, he must promptly disavow the act, or he makes it his own."

■ It is argued with apparent earnestness that in the absence of any express resolution by the board of directors, in formal meeting assembled and recorded in the minute book, Allen exceeded his authority under the by-laws, and a number of cases are cited as to the necessity of formal action in many cases requiring corporate action. It is perfectly well settled, however, that where there is a close corporation, such as this was, in which the stockholders of the corporation themselves ignore the by-laws and conduct its business differently, that rule does not apply.

The subject was discussed in *Holstein Co.* v. *H. Kirk & Sons*, 150 Va. 82, 142 S. E. 373, 375. The question there was whether the treasurer and secretary of the Holstein Company had authority to execute a note when the by-laws of the company did not authorize them to do so, and they had not been expressly authorized to do so by the directors at any meeting. This is said: "However sound this proposition may be, it has little application to this case. Here was a corporation which, while it had a board of directors, they never met. It had other officials, but the entire management of the business was entrusted to these officers, and unless they had acted for the company its business would have ceased."

The same rule is enforced in *Union Bank & Trust Co.* v. *Long Pole Lumber Co.*, 70 W. Va. 558, 74 S. E. 674, 677, 41 L. R. A. (N. S.) 663, and this is stated in that opinion: "The issue involved not so much the authority actually

conferred upon the president, as that which he apparently had and exercised with the knowledge and consent or acquiescence of the board of directors. In other words, the inquiry goes to the extent of the power he was permitted to exercise, rather than the extent of the power actually conferred. The law does not sustain the view that one dealing with a corporation through its officers must, under all circumstances, go to its by-laws as the exclusive evidence of his authority."

In *Haynes Chemical Corp.* v. *Staples & Staples, Inc.*, 133 Va. 92, 112 S. E. 802, 806, this is quoted from *Am. B. H. O. S. Mach. Co.* v. *Burlack*, 35 W. Va. 661, 14 S. E. 319, 323: "We cannot close our eyes to the fact that there are so-called corporations which for all practical purposes, when they do business, cannot be reached at all if we are not permitted to treat the only known or accessible embodiment in any other way than according to the character the manager may see fit for the occasion to assume. He is possessed of full authority to talk and act when there is anything to be gained, but he is not the proper man to talk or act when there is anything to be lost; and yet the principal, for all practical purposes, if not often in reality, is represented in no other way except by a name, so that a species of legerdemain is carried on, 'now you see it and now you don't.' The ordinary business world is becoming tired with, if not vexed at, this sort of jugglery, and thinks that the true principles of evidence and agency are not so narrow or so rigid that they may not be made to reach such cases."

■ ■ The general rule as to the necessity of formal corporate action for the protection of stockholders who are widely scattered, who have no notice of irregularities, and have no other way of safeguarding their interests except to insist upon observance of the rules, has slight application to a corporation which conducts its business as the Donald

Company did.  There were only three stockholders; there were only three directors; there were only three officials. Jointly and severally they conducted the business of the corporation, and the evidence is ample to show that they were all perfectly familiar with this contract (*i. e.*, the application).  It would be a shock to reason and a fraud upon the Aetna Company to hold that the Donald Company is not bound by it.  Certainly a corporation should act through its board of directors, and in accordance with the limitations imposed by its charter and by-laws; but when, with the knowledge and acquiescence of all of its stockholders, it declines so to do, it must accept the consequences.  It cannot be permitted to accept all the benefits of such irregular contracts without assuming all of the resulting liabilities.

2.  The second error assigned is that the court erred in holding that the testimony of Allen was admissible.  It is claimed that his testimony is inadmissible upon the ground that the evidence of an alleged agent is inadmissible to prove his agency until the agency has been first otherwise proved.

This claim must be inadvertent.  It confuses the mere declarations of an agent made, not as a witness in court, but to others who are brought into court and introduced as witnesses to prove such declarations.  The testimony of the agent himself is admissible.

In *Fisher* v. *White*, 94 Va. 236, 26 S. E. 573, 575, the court said: "Neither are the admissions or statements of an alleged agent that he was the agent of another, evidence of that agency, but the fact must be proved by other evidence.  If it is desired to establish it by the agent himself, he must be called as a witness.  Mechem on Agency, sections 100, 102."

In *Deitz* v. *Whyte*, 131 Va. 26, 109 S. E. 212, 214, the rule is thus stated: "It is well settled that the declaration

of an agent made before the agency began, or after its termination, cannot be given in evidence against his principal. The agent is a competent witness, and may be put on the stand and allowed to testify as any other witness, but his declarations are not admissible."

We perceive no reason for doubting that the testimony of an agent, unless he is disqualified for some other cause, is admissible as to the fact of his agency. 2 C. J., page 933, section 689.

The case cited to support the assignment, *J. C. Lysle, etc.*, v. *S. W. Holt & Co.*, 122 Va. 565, 95 S. E. 414, is inapplicable. The opinion recognizes the rule which we have stated. The agent was not introduced in that case. What was attempted was to prove his declarations. Clearly the agent himself would have been a competent witness to testify as to the agency.

3. The third assignment of error is based upon the forthcoming bond hereinbefore copied. The contention is made that because of this recital in that bond "the said Stuart Moore, temporary receiver, has made demand upon the said Aetna Casualty and Surety Company for surrender and delivery to him of the property of the said H. A. Donald and Company now or heretofore in the possession of the said Aetna Casualty and Surety Company; and, whereas, the said Aetna Casualty and Surety Company desires to retain possession, for the time being, of such property of the said H. A. Donald and Company"—that this constitutes an estoppel of the Aetna Company conclusive of this controversy. For this the established rule that recitals in bonds generally preclude the obligors from thereafter denying facts thereby admitted, is relied on.

The only case cited in support of this contention to which we need make any reference is the case of *Syme, et al*, v. *Montague*, 4 Hen. & Munf. (14 Va.), 180, 181. In that case there was an execution against Syme which had been

levied upon personal property. Syme, the judgment debtor, and his sureties entered into a forthcoming bond for the delivery of this property to the sheriff at the time and place fixed for the sale under the execution. Thereafter Syme and his sureties obtained an injunction, one of the grounds of which was that the negroes taken under the execution were not in fact his (Syme's) 'property, but had been settled in a marriage contract upon two of his daughters. The decree of the chancellor dissolving the injunction and dismissing the bill was affirmed. Among other things, Judge Tucker said this: "As to the other defendants, how friendly soever their motives might have been for becoming John Syme's security in the forthcoming bond, to prevent the sale of property taken to satisfy an execution against him, though belonging wholly or in part to other persons, neither law nor equity can, I conceive, regard them in any other light than as securities for a debtor, who by giving a bond, reciting (as is the usual form) that the execution was levied on certain slaves, the property of the debtor, are, as well as the debtor, estopped from setting up any title adversary to that of the debtor." The forthcoming bond in that case. was the ordinary forthcoming bond, given by an execution debtor whose property had been levied on, conditioned for its delivery at the time and place of sale. Code, section 6518. When forfeited, neither the principal nor the surety can deny his liability thereon.

That case, however, has no reference to this, and that bond has slight similarity to the bond here involved. This bond is quite like a bond given, not by the debtor, but by a third person who claims as his own the property levied upon, who enters into a bond to have the property, or its value, forthcoming only if and when the court shall determine that his claim is invalid. If his claim is valid, and the court so determines, there is no breach of the condition and no liability under the bond. It is like a bond

given for the forthcoming of property the ownership of which is in dispute, under our interpleader statutes, Code, sections 6152–6157, which have been long substituted for the common law writ of replevin. *Allen* v. *Hart*, 18 Gratt. (59 Va.) 730; *Kiser* v. *Henlsey*, 123 Va. 541, 96 S. E. 777.

The property here involved had been delivered to the Aetna Company in December, 1923, by the Donald Company, pursuant to its contract. It had been, in accordance with their agreement, thereafter used for the completion of the work, some of it had doubtless been worn out, some had been sold, and the Aetna Company intended to sell the rest and apply the proceeds towards the satisfaction of the debt due to it by Donald and Company. Under these circumstances, the receiver in bankruptcy, in October, 1924, before his appointment as trustee, also claimed the property. The testimony clearly shows that it was agreed by both claimants that it would be best for the interests of all concerned to have the property sold. It was agreed that the bond be executed by the Aetna Company only for the purpose of preserving any possible legal rights of the receiver, as claimant for the creditors. It only bound the Aetna Company to have the property, or its proceeds, "forthcoming at such time and place as the court may require, or in lieu thereof its equivalent in lawful money as determined by the fair cash value of such property or article." There has been no breach of this condition. No court has required the return of the property or the payment of its value by the Aetna Company. The recitals in the bond must be construed in connection with the circumstances under which it was executed—that is, it was induced because there were contesting claimants of the property; it was brought about because Moore, the temporary receiver, claimed and demanded delivery of the property. Delivery was refused because the Aetna Company claimed that it had a lien upon it superior to the

claim of the receiver or of any of the other creditors of the bankrupt. The designation of the property as the property of H. A. Donald and Company is no more than a recognition of the fact that it had been its property, that the receiver claimed it, and that even should it be thereafter legally determined that the title thereto still remained in the Donald Company, the Aetna Company nevertheless claimed a valid lien upon it and would hold the property, or its proceeds, if sold, subject to the determination of the rights of both claimants by some court having jurisdiction of the controversy. Any other construction of the forthcoming bond would defeat its purpose and operate as a fraud.

That the receiver, the trustee and his attorney so construed the bond is also apparent, for the original bill shows, in the main, the circumstances to which we have referred, and expressly avers, upon information and belief, "that the said Aetna Company claims or has claimed, at the time of taking possession of said personal property, right, title and interest thereto and therein by virtue of the said writing," referring to the application for bond, and prays for the determination of the rights of the parties.

The natural inquiry then suggests itself as to when and how this question of estoppel was first raised. The answer is that it seems to have been an afterthought. Certain exceptions were filed to the commissioner's report, and then, three months thereafter, an additional exception, setting up this estoppel, was made. The court might well have held that this was so inconsistent with all the previous proceedings and allegations that it could not then be raised, but doubtless preferred, as we do, to decide cases upon the merits. The case was held open, further depositions were taken, and the testimony of the receiver himself, fairly construed, is sufficient to show that he fully understood the bond, its purpose and its effect. No element of estoppel against the Aetna Company exists.

The court did not err in overruling this exception.

4. The fourth assignment of error raises similar questions which are determined by the same considerations. There was a steam shovel, once owned by the Donald Company, which constituted a part of the property upon which the Aetna Company claimed a lien because of the indebtedness of the Donald Company to it. By agreement this steam shovel was sold and the proceeds, amounting to $3,800, deposited in bank to await the determination of this case. While this precise sum of money was not referred to by the commissioner in his report, the bill, answer and circumstances are sufficient to show that it belongs to the Aetna Company for the same reasons which have been heretofore indicated.

5. The fifth assignment is based upon the statute, Code 1924, section 5562-a, Acts 1920, page 362, chapter 257. That statute provides:

"No contract in writing entered into between a citizen of this State and any person, firm, company or corporation, domestic or foreign, doing business in this State, and for the sale and future delivery of any goods or chattels, machinery or mechanical devices or personal property of any kind or sort whatsoever, shall be binding upon the purchaser, where the form is printed and furnished by the person, firm, company, or corporation, unless all of the provisions of such contract are clearly and plainly printed or written, and where printed such provisions and covenants and all stipulations as to the rights of the vendor shall be in type of not less than the size known as ten point."

The point is made that the contract evidenced by clause 8 of the application for bond is not printed in ten point type. As stated by the commissioner, this act is for the protection of a purchaser of goods sold for future delivery on the representations of an agent. Its object is to permit the introduction of oral evidence by the purchaser contradictory of and inconsistent with provisions of the

contract which are printed in small type. It is for the protection of such a purchaser and has no application to this contract. In cases in which it is applicable, the rule of evidence is changed—that is, the statute permits the purchaser to introduce parol evidence to contradict the provisions of the sales contract, unless such provisions are printed in ten point type. It merely changes the rule of evidence in such cases. So this court has held in the case of *Piedmont* v. *Buchanan,* 146 Va. 627, 131 S. E. 793, 795: "The plain purpose of that act was to change the common law rule as to contemporaneous parol agreements altering and modifying contracts of the particular description therein mentioned, which are not printed or written in the manner and form required by the act."

Originally, the claim was made for the trustee that, even if otherwise valid, the lien claimed by the Aetna Company constituted an unlawful preference under the bankruptcy act, as made within four months of the bankruptcy. The question, however, has been settled against this contention by the Supreme Court of the United States. *Martin* v. *Commercial National Bank,* 245 U. S. 517, 38 S. Ct. 176, 62 L. Ed. 442; *Finance & Guaranty Co.* v. *Oppenhimer, Trustee,* 276 U. S. 10, 48 S. Ct. 209, L. Ed. 443. These cases held that one who has a lien upon personal property, valid under the State law and created more than four months before the bankruptcy, has a claim thereon superior to the trustee in bankruptcy for the general creditors who have no liens, even though such lienor should not take possession of the property nor exercise his rights under the lien until within four months of the bankruptcy. This is only another way of stating that valid liens under State law which existed four months before the time of the bankruptcy cannot be disturbed.

In our judgment the decree is plainly right in every respect.

*Affirmed.*