## Edward R. Curley, Jr., et al.

### v.

## Dahlgren Chrysler-Plymouth Dodge, Inc., et al.

Record No. 921288

April 16, 1993

Present: All the Justices

*William B. Cave (Felton & Cave,* on briefs), for appellants.

*Irvin Hannis Catlett (Ted R. Dean,* on brief), for appellees Irvin Hannis Catlett and Ted R. Dean.

No brief or argument for appellees Dahlgren Chrysler-Plymouth Dodge, Inc. and Robert L. Hamilton.

JUSTICE LACY delivered the opinion of the Court.

In this appeal involving a closely held corporation, we consider whether the trial court properly dismissed (1) a claim of unlawful

distribution of corporate assets because it was filed against shareholders rather than against duly elected directors and (2) a claim to impose shareholder liability for corporate debts as barred by the statute of limitations.

In 1987, Edward R. Curley, Jr., John Harry Hadjy, and Thalia Stevenson incorporated Dahlgren Chrysler-Plymouth, Dodge, Inc. (the dealership) and through it purchased an automobile dealer franchise. Chrysler Credit Corporation (Chrysler Credit) financed the dealership's purchase of new and used automotive inventory, parts, and equipment. As part of the financing arrangements, Curley, Hadjy, Stevenson, and their respective spouses signed a "Continuing Guaranty" agreeing to pay the dealership's indebtedness to Chrysler Credit.

In March 1989, Motors Holding Company, Inc. purchased Curley's 52% stock interest in the dealership. Following the purchase, Irvin H. Catlett, the president of Motors Holding Company, Inc., Ted R. Dean, and Robert L. Hamilton began participating in the operation of the dealership. The stock purchase subsequently was renegotiated and, on May 10, 1989, Curley's stock was purchased jointly by Motors Holding Company, Inc., Jerry M. Dean, Ted R. Dean, Lloyd Pate, Robert L. Hamilton, and Irvin H. Catlett. Hadjy and Stevenson sold the remaining 48% of the stock in the dealership to the group that same day. On May 10, 1989, the new shareholders completely controlled the dealership and its operations. At no time, however, did they hold corporate meetings or elect corporate directors as required by statute.

On May 31, 1989, the dealership sent Chrysler Credit three checks that were returned for insufficient funds. On June 22, 1989, pursuant to a court order, Chrysler Credit repossessed its collateral from the dealership. Chrysler Credit also obtained a judgment against Curley, Hadjy, Stevenson, and their spouses (collectively Curley) for the dealership's unsatisfied indebtedness to Chrysler Credit. As a result of that litigation, Curley's liability to Chrysler Credit totaled $356,109 plus interest.

On May 9, 1991, Curley filed this action against the dealership, Jerry M. Dean, Lloyd Pate, Robert L. Hamilton, Ted R. Dean, Irvin H. Catlett, and Motors Holding Company, Inc., alleging *inter alia* three breach of contract counts, a count labeled "Unlawful Distribution of Corporate Assets" (Count V), and one entitled "Shareholder Liability for the Debts of Dahlgren Chrysler-Plymouth, Dodge, Inc." (Count VI).

At the close of Curley's evidence, the trial court granted defendants' motion to dismiss Count VI, finding that it "appears to the Court to be based on fraud" and was barred by the statute of limitations. The following morning, after the defendants began to present their evidence, the trial court granted their motion to dismiss Count V on the ground that they were not directors of the dealership. The jury entered a verdict of $275,000 against the defendants on the breach of contract counts. Curley appeals the dismissal of Counts V and VI.[1]

In support of Count V, "Unlawful Distribution of Corporate Assets," Curley alleged that the defendants distributed automotive and related assets of the dealership exceeding $300,000 in value to themselves, at a time when the defendants knew the dealership could not pay its debts. At trial, Curley introduced evidence showing that the dealership failed to remit to Chrysler Credit the amounts required under the financing agreement for new car sales and that the defendants transferred a number of cars to Motors Holding Company, without receiving payment. The inventory value of these transactions as shown on the dealership's books amounted to over $200,000. This process, Curley argued, depleted the dealership's assets to a point at which it could no longer pay its debts as evidenced by the checks returned to Chrysler Credit for insufficient funds.

Curley asserted that this scheme was a distribution of the dealership's assets in violation of Code §§ 13.1-653, -690 and -692. Curley alleged that the defendants operated the dealership on a day-to-day basis after the transfer and were the officers, directors, and shareholders of the corporation.[2] Curley sought to recover from them $356,109 plus interest, the amount of the dealerships's

---

[1] During the pendency of the appeal, settlements were reached with appellees Jerry M. Dean, Lloyd Pate, Motors Holding Company, Inc., and Ted R. Dean, and they were dismissed as parties to this appeal.

[2] Curley does not invoke the doctrine of *de facto* corporate directors, *Farmer's Foods, Inc.* v. *Industrial Dev. Auth.*, 221 Va. 880, 882, 275 S.E.2d 891, 893 (1981); 2 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations §§ 372 *et seq.* (perm. ed. rev. vol. 1990) (hereinafter Fletcher); or assert a common law cause of action for creditors against a shareholder. *Robar Dev. Corp.* v. *Minutello*, 268 Pa. Super. 406, 408 A.2d 851 (1979); *Peters* v. *Crochet Homes, Inc.*, 370 So.2d 651 (La.Ct.App. 1979); *Reilly* v. *Segert*, 31 Ill.2d 297, 201 N.E.2d 444 (1964); 3 Fletcher § 993 (perm. ed. rev. vol. 1986); 3A Fletcher § 1185 (perm. ed. rev. vol. 1986).

remaining indebtedness that Curley was required to pay Chrysler Credit.

The trial court characterized Count V, "Unlawful Distribution of Corporate Assets," as a cause of action wholly statutory in nature and, based on the language of the Code, held that it could be brought only against the duly elected directors of the corporation. The evidence showed that no directors had been elected following the transfer of ownership of the dealership and, since these defendants were not directors, the trial court concluded that the count had to be dismissed.

The statutes in issue provide that "a board of directors" may authorize the corporation to make distributions to its shareholders unless, after such distribution, the corporation "would not be able to pay its debts as they become due in the usual course of business." Code § 13.1-653. If corporate assets are distributed in violation of Code § 13.1-653, a director may be liable to the corporation and to its creditors under certain circumstances. Code § 13.1-692(A). A director found liable is entitled to seek contribution from the shareholders receiving the improperly distributed assets. Code § 13.1-692(B).

These provisions establish a "safe harbor" for directors who participate in the distribution of corporate assets. If a director has complied with the standards of conduct for directors set out in § 13.1-690, he cannot be held personally liable for a distribution that violates § 13.1-653.

These statutes also are designed to prevent corporations from defeating claims of creditors by improperly distributing assets and to provide the corporation and creditors a remedy in the event such improper distribution occurs. Relying solely on the statutory reference to "directors," the defendant shareholders here seek to avoid application of these statutes to them because they are not duly elected directors of the corporation, a circumstance arising from their own failure to elect corporate directors.

Small, closely held corporations, like the dealership here, often do not follow every statutory requirement imposed on corporations generally. Even so, we repeatedly have refused to invalidate acts of closely held corporations simply because certain corporate formalities were not observed. *Lake Motel, Inc.* v. *Lowery*, 224 Va. 553, 560, 299 S.E.2d 496, 500 (1983). The converse is equally true. Shareholders, such as these, who comprise all the shareholders in

the corporation, cannot escape liability by failing to observe the formality of electing directors when they exercise all the powers and undertake all the activities of directors. *Coastal Pharmaceutical Co. v. Goldman*, 213 Va. 831, 836, 195 S.E.2d 848, 852 (1973) (citing *Moore v. Aetna Casualty & Sur. Co.*, 155 Va. 556, 570, 155 S.E. 707, 711 (1930)).

■ The evidence in this case is that the defendant shareholders effectively were the corporation. They ran the dealership on a daily basis; they made acquisition and sale decisions; they encumbered the corporation with debt. These facts show that the defendant shareholders assumed the roles of directors and officers of the dealership. Under these circumstances, the shareholders assumed not only the authority and fiduciary responsibilities of directors, but also the liabilities resulting from the exercise of those roles. *Pepper v. Litton*, 308 U.S. 295, 306, 309 (1939).

We conclude that the trial court erred in dismissing Curley's claim of unlawful distribution of corporate assets because, although the defendant shareholders were not duly elected directors of the dealership, they had assumed and exercised the duties of directors without benefit of formal election. Consequently, they were "directors" for purposes of §§ 13.1-653, -690, and -692.

Next, Curley assigns error to the dismissal of Count VI, asserting that it is not a fraud count, but "an action to charge the defendants personally for the fraudulent conveyance of the Dealership's assets," subject to the limitation period in Code § 8.01-253. The trial court held that Count VI was "based on fraud" and, citing Code § 8.01-248, dismissed the count as untimely filed. The pleadings resolve this issue.

Count VI, labeled "Shareholder Liability for the Debts of Dahlgren Chrysler-Plymouth, Dodge, Inc.," alleges that the defendants "treated the corporate existence of Dahlgren Chrysler-Plymouth, Dodge, Inc. as a mere instrumentality and the alter ego of the shareholders," and that the defendants "may not use [the dealership's] corporate veil to shield themselves from personal liability for the debts of the Dealership." While Count VI contains allegations that the defendants engaged in fraudulent and illegal acts, there are no allegations of reliance on fraudulent acts or of damages sustained as a result of any fraudulent act.

■ The claim in Count VI seeks to pierce the corporate veil of the dealership and impose personal liability on the defendant shareholders for the fraudulent conveyance of the dealership's assets.

Consequently, the trial court erred in determining that Count VI was a claim for fraud. Furthermore, even if Count VI were a fraud claim, the record simply is insufficient to show when Curley discovered or should have discovered the fraud and thus establish the accrual date of the cause of action, Code § 8.01-249, which must precede application of the statutory limitation for claims based on fraud, Code § 8.01-243.

For the foregoing reasons we will reverse the judgment of the trial court dismissing Counts V and VI of the motion for judgment and will remand the case for further proceedings.

*Reversed and remanded.*