# CIRCUIT COURT OF FREDERICK COUNTY

Lake Holiday Country
Club, Inc., et al.

v.

Summit Golf Club, Inc., et al.

April 5, 1999

Case No. (Chancery) 98-62

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on March 30, 1999, on Defendant's Plea of the Statute of Limitations. Stephen H. Moriarty, Esquire, appeared for the Plaintiffs, and David H. Moyes, Esquire, appeared for the Defendants.

## I. *Statement of Material Facts*

The following material facts are pleaded in the Bill of Complaint and Defendant's Answer.

Plaintiffs Bloomingdale and Keister own lots within Lake Holiday development in Frederick County, Virginia, and are members of the Lake Holiday Country Club. Lake Holiday Country Club is a Homeowners' Association and a Virginia nonstock corporation. The Defendant, Summit Golf Club, Inc., is a Virginia stock corporation.

By deeds dated December 9, 1986, and January 20, 1987, Lake Holiday Country Club conveyed to the Summit Golf Club land in Lake Holiday and improvements comprising a golf course. At the time of the conveyances,

Defendant Simms was the president and board member of both the Lake Holiday Country Club and the Summit Golf Club.

In their Bill of Complaint, the Plaintiffs have alleged claims of fraud against the Defendants and ultra vires based on the conveyance of the golf course land in 1986 and 1987.

At the time of the golf course conveyances, Plaintiffs Bloomingdale and Keister did not own property in the Lake Holiday Development; consequently, they were not members of the Lake Holiday Country Club at the time of the conveyances.

In August 1997, a group comprised of certain members of Lake Holiday Country Club was formed called the Friends of the Summit. The Defendants claim that sometime before October 28, 1987, the Friends of the Summit distributed a newsletter to the property owners within the Lake Holiday Development apprising them specifically about a lawsuit then pending in the Circuit Court of Frederick County styled *Evitt* v. *Lake Holiday Country Club, Inc.*, Frederick County, Chancery No. 88-294. This newsletter specifically described the golf course conveyance and Simms' connection with both corporations and stated in pertinent part:

> The lawsuit contains numerous apparent allegations of mismanagement at the Summit by Mr. Simms and his directors. In summary form, they are as follows … .
>
> Mr. Simms has transferred title of the front nine holes of the golf course to a corporation of which he was president and principal shareholder. The corporation, the Summit Golf Club, Inc., paid nothing for the 101 acres comprising the front nine holes. The property owners have never been given all the facts relative to the transfer. Mr. Simms' letter of October 5, 1987, is misleading and fails to state many of the pertinent facts, e.g., the value of the 101 acres at the time of the transfer and what efforts had been made by Lake Holiday Country Club, Inc., to finance the development of the golf course or sell the front nine to another entity. Furthermore, at the annual meeting in June of 1986, Mr. Simms failed to tell the property owners that the Summit Golf Club, Inc., was formed by him in July of 1985, and that he was the president, a director, and principal stockholder. The private offering statement for the Summit Golf Club, Inc., paints a very rosy picture for an investor in the golf course. If the investment was so good, why didn't the property owners keep the golf course? Also, since the transfer of the golf course to Simms'

corporation it has gone into considerable disrepair. The unfortunate stockholders of the Summit Golf Club, Inc., have been reduced to watering and maintaining the course themselves. Notwithstanding their efforts, the greens and fairways are badly damaged from lack of water, equipment, and manpower. The second nine has likewise been left to languish. Property owners were told the golf course would be a full 18 holes for the summer of 1987, but the second nine holes has yet to be opened to the public. Mr. Simms promised the property owners a quality golf course. Where is it?

These alleged facts are the basis of the present lawsuit.

There is a document filed August 21, 1989, in the case of *Evitt* v. *Lake Holiday*, Frederick County, Chancery No. 88-294, signed by various members of the Lake Holiday Country Club, which sought "To ascertain what land sales, or other transactions, have taken place between persons on the board of Lake Holiday Country Club, Inc., and Lake Holiday Estates Utility Co., Inc., and the Summit Golf Club, Inc., and/or Independence Land and Capital, Inc. … ." The *Evitt* case was dismissed under the two-year rule pursuant to Virginia Code § 8.01-335 on January 8, 1992. While the newsletter circulated by the Friends of the Summit in 1987 discussed the golf course transaction and while other documents and pleadings in the *Evitt* case indicate that the golf course transaction was under scrutiny in that suit, the facts surrounding the golf course transaction were not specifically alleged as a basis for relief in the *Evitt* suit. It also appears that in the *Evitt* suit that the Lake Holiday Country Club management resisted the efforts of its members to obtain copies of its records, just as it did in other cases before this court.

On February 27, 1998, the Plaintiffs filed the pending suit in the Circuit Court of Frederick County, Virginia, which is more than ten years after the conveyances of the golf course land, which the plaintiffs now seek to rescind.

The Defendants have filed Pleas of the Statute of Limitations and Laches to the pending suit.

## II. *Conclusions of Law*

The first question to consider is whether the individual Plaintiffs Bloomingdale and Keister have standing to maintain the asserted rights of

action. To determine standing, the question is "whether ... [the plaintiff] ... has a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed." *Cupp v. Board of Supervisors of Fairfax County*, 227 Va. 580, 589 (1984). "To have standing to sue for damages for tortious injury to property, a plaintiff must have an interest in the property injured [at the time of the alleged tortious act]. 59 Am. Jur. 2d, *Parties*, § 29 (1971); *cf. Cemetery Cons. v. Tidewater Fun. Dir.*, 219 Va. 1001, 254 S.E.2d 61 (1979) (private party with no interest in contract may not sue on contract to question the validity of contractual provisions)." *Keepe v. Shell Oil Co.*, 220 Va. 587, 590, 260 S.E.2d 772 (1979). Since Bloomingdale and Keister did not own the lots in Lake Holiday at the time in question, they have no standing individually to later challenge actions which occurred prior to their becoming members of the Lake Holiday Country Club based on a fraud which occurred prior to their becoming members; however, since they are now members of the Lake Holiday Country Club, they do have standing derivatively as members of Lake Holiday Country Club to now question the legal authority and process by which the Country Club conveyed the land to the Golf Club in 1986 and 1987. *See* Virginia Code § 13.1-828(B)(2). The Plaintiffs have no standing to seek any individual relief for themselves in this suit. Although the Plaintiffs cite Virginia Code § 55-515 in their Bill of Complaint as support for the proposition that the individual plaintiffs have standing in this suit, it is not clear what application that statute has to this case, since no violation of the subdivision declaration is alleged.

Virginia Code § 8.01-249 provides that a cause of action shall be deemed to accrue "[i]n actions for fraud ... when such fraud ... is discovered or by the exercise of due diligence reasonably should have been discovered." Assuming that the 1987 Friends of the Summit letter was distributed to the membership as the defendants claim, there is no question but that in 1987, at least some members of the Lake Holiday Country Club were both aware of and aggrieved by the conveyance of the golf course property to the Summit Golf Club and that they knew that Simms was the major player in both the Country Club and the Golf Club, so at that time they would have had reason to suspect that a fraud may have been committed as is now alleged.

The statute of limitations for a fraud action applies where the misrepresentations are made incident to a conveyance of real property. *See STP Marketing Corp. v. Zolfaghari*, 240 Va. 140 (1990) (fraud in execution of deed of trust); *Bergmueller v. Minnick*, 238 Va. 332, 336-337, 383 S.E.2d 772 (1989) (represented that a successful perc had been made on the property, when that was untrue); and *Pigott v. Moran*, 231 Va. 76, 341 S.E.2d 179

(1986) (misrepresentation of zoning of adjacent property). For causes of action accruing on or after July 1, 1987, "every action for damages resulting from fraud, shall be brought, within two years after the cause of action accrues." Va. Code § 8.01-243(A). The rights of action asserted are for fraud. The bill of complaint and motion for judgment were filed more than five years after the challenged conveyances of the golf course; however, the Plaintiffs claim that they were prevented from discovering the fraud and rely upon the savings provisions of Virginia Code § 8.01-249 and claim that they have exercised due diligence.

"The remedy of constructive trust has been applied to profits in the hand of a defendant when the court determines that they rightfully belong to another. *See Greenspan v. Osheroff*, 232 Va. 388, 400, 351 S.E.2d 28, 36-37 (1986); *Campbell v. Corpening*, 230 Va. 45, 49-50, 334 S.E.2d 589, 592 (1985)." *Nedrich v. Jones*, 245 Va. 465, 473, 429 S.E.2d 201 (1993) (transfer of assets to defraud creditors). In *Adelman v. Conotti Corp.*, 215 Va. 782, 789-90, 213 S.E.2d 774 (1995), the Supreme Court stated:

> Under Virginia law an officer of a corporation, in his dealings with the corporation, has the same duty of fidelity which arises in dealings between a trustee and a beneficiary of the trust. *Deford v. Ballentine Realty Corp.*, 164 Va. 436, 180 S.E. 164 (1935). Where a trustee deals with the *cestui que trust*, such transactions, while not *ipso facto* voidable, are *prima facie* presumed to be invalid and the fiduciary must bear the burden of proving that the transaction was fairly conducted. *Waddy v. Grimes*, 154 Va. 615, 153 S.E. 807 (1930).
>
> In *Rowland v. Kable*, 174 Va. 343, 6 S.E.2d 633 (1940), we outlined the principles which apply to a director dealing with his corporation:
>
> "The authorities are agreed that a director of a private corporation cannot directly or indirectly, in any transaction in which he is under a duty to guard the interests of the corporation, acquire any personal advantage, or make any profit for himself, and if he does so, he may be compelled to account therefor to the corporation. This does not mean that he may not deal with his corporation or sell his property to the corporation if the transactions are open, fair and honest, and the corporation is represented by competent and authorized agents. The unbending rule is that the director must act in the utmost good faith, and this good faith forbids placing himself in a position where his

individual interest clashes with his duty to his corporation. The purpose of the law is to secure fidelity in the director. If, in violation of the general rule, he places himself in a position in which he may be tempted, by his own private interest, to disregard that of the corporation, his transactions are voidable at the option of the corporation and may be set aside without showing actual injury." *Id.* at 366, 6 S.E.2d at 642.

We hold this same fiduciary duty applies to the conduct of the officers and directors of a corporation in their dealings with the corporation's stockholders.

Virginia Code § 13.1-871 outlines the specific procedure governing conflict of interest transactions of a director of a nonstock corporation in his dealings with that corporation. However, the Supreme Court has noted that "we have repeatedly refused to invalidate acts of closely held corporations simply because certain corporate formalities were not followed." *Curley v. Dahlgren Chrysler-Plymouth Dodge, Inc.,* 245 Va. 429, 433, 429 S.E.2d 221 (1993).

Laches is the neglect or omission to assert a right for an unreasonable and unexplained length of time under circumstances that are prejudicial to an adverse party. *McNeir v. McNeir,* 178 Va. 285, 16 S.E.2d 632 (1941); *Finkel Outdoor Products, Inc. v. Bell,* 205 Va. 927, 140 S.E.2d 695 (1965). However, laches does not apply to cases outside of the statute of limitations applicable to the right of action asserted. As noted in the seminal treatise on Virginia chancery practice, R. T. Barton, *Pleading and Practice in the Courts of Chancery,* pp. 53-54 (3d ed. 1926):

> Judge Moncure, in the case of *Foster's Curator v. Rison,* 58 Va. 335 (settlement of partnership accounts), gives perhaps a clearer view of the effect of the statute than is to be found elsewhere. He says: "The statute of limitations not being a bar to the suit, it seems to follow, as a necessary consequence, that laches and lapse of time constitute no such bar; but they may, notwithstanding, have a material effect in deciding upon particular claims which may be asserted in the course of the settlement of the partnership accounts. Of course, I do not mean to say that laches and lapse of time constitute one. *Where the statute [of limitations] is a bar there is no need of any bar for laches or lapse of time. The latter bar [of laches] peculiarly applies where the former [statute of limitations] does not.* What I mean to say is, that if the cause of action be one to which the statute applies, but the lapse of

time since it accrued be not such as to bring the case within the statute, laches and lapse of time cannot in themselves constitute a bar to the suit. [Emphasis added.]

The interplay between the statute of limitations and laches is sometimes overlooked. However, they are complementary doctrines, not mutually exclusive, and they both act to bar the assertion of stale claims. Consequently, a critical factor to consider in determining whether or not the doctrine of laches will operate as a bar to an action is to first determine the specific right of action being asserted and the statute of limitation applicable to that action, because "[i]t is a well-established principle uniformly acted upon by courts of equity, that in respect to the statute of limitations equity follows the law; and if a *legal demand* be asserted in equity which at law is barred by statute, it is equally barred in equity." *Sanford v. Sims,* 192 Va. 644, 649, 66 S.E.2d 495, 498 (1951) (emphasis added); *see also, Marriott v. Harris,* 235 Va. 199, 212-13, 368 S.E.2d 225, 231 (1988). *Belcher v. Kirkwood,* 238 Va. 430, 433, 383 S.E.2d 729 (1989) (the three year statute of limitations applicable to oral contracts bound the trial court in its ruling on the defense of laches). *See also* Annotation, *When Statute of Limitations Starts to Run against Enforcement of Constructive Trust,* 55 A.L.R. 2d 220, 260 (1957); and *Foltz v. Foltz,* 5 Va. Cir. 141, 142 (Frederick Co. 1984) (five year statute of limitations applied to bar suit by exwife to recover stock shares in marital corporation) *relying on Redford v. Clarke,* 100 Va. 115, 120-21, 40 S.E.2d 630 (1902). *See generally* 27A Am. Jur. 2d, *Equity,* 194.

Like most equitable doctrines, laches is a creature of circumstance, and it will stretch to cover a wide range of circumstances in those factual situations where the Supreme Court has applied it. Since it is elastic in application, it is slippery of precise definition, and the cases to which it has been applied must be carefully studied to extract the rules governing its application. However, in every case to which laches applies, the defendant must prove that it has been prejudiced by the delay. *Stewart v. Lady,* 251 Va. 106, 114, 465 S.E.2d 702 (1996). Since it is premised on prejudice to the defendant, in some jurisdictions, laches may be pleaded in equity in cases where the statute of limitations has not run on the underlying right of action. *See* 27A Am. Jur. 2d, *Equity,* § 196. However, no case was cited, nor has the court found, a Virginia case where laches was applied *to shorten the time* within which the claim should have been filed. *But see United States v. Lomas Mortg., USA Inc.,* 742 F. Supp. 936, 939 (W.D. Va. 1990) (suit to enforce deed of trust not barred by

laches because twenty year statute of limitations of § 8.01-241 had not expired).

In recent years, the doctrine of laches has been discussed in the context of at least two cases where members of corporations challenged the procedures by which corporate action had been taken. In both cases, there was no specific statute of limitations specifically applying to the right of action seeking equitable relief, so the court applied the doctrine of laches to assess the effect of the plaintiffs' delay in asserting their rights. In *Stewart v. Lady*, 251 Va. 106, 114, 465 S.E.2d 702 (1996), there was a battle over corporate control of a nonstock corporation, and the Supreme Court discussed the doctrine of laches:

> We have held that "no rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances." *Puckett v. Jessee*, 195 Va. 919, 930, 81 S.E.2d 425, 431 (1954). We have defined laches as "the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party." *Princess Anne Hills v. Susan Constant Real Est.*, 243 Va. 53, 58, 413 S.E.2d 599, 602 (1992); *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 47, 353 S.E.2d 727, 735 (1987). The burden of proving laches and prejudice is upon the litigant asserting that defense. *Princess Anne Hills*, 243 Va. at 58, 413 S.E.2d at 602. Even though a finding of laches rests primarily within the discretion of the chancellor, we will not approve such finding if the party asserting this defense fails to prove prejudice. *Masterson*, 233 Va. at 48, 353 S.E.2d at 735.

In *Princess Anne Hills Civic League v. Susan Constant Real Estate Trust*, 243 Va. 53, 58, 413 S.E.2d 599 (1992), like the instant case, members of a nonstock corporation challenged the corporate procedure by which land had been conveyed by the corporation, and the Supreme Court held that laches did not bar a suit by homeowners in the development to set aside the deed, even though the suit was filed eight years after the deed was executed, because there was no showing that the delay prejudiced the party receiving the property, stating:

> Laches is the neglect or failure to assert a known right or claim for an unexplained period of time under circumstances prejudicial to the adverse party. *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 47,

353 S.E.2d 727, 735 (1987). When a chancellor considers the defense of laches, he does not apply an absolute rule, as is the case with a statute of limitations, but must determine each case in light of its particular circumstances. *Bartsch v. Bartsch*, 204 Va. 462, 468, 132 S.E.2d 416, 420 (1963). The burden of proving laches is upon the party who asserts it. *Morris v. Mosby*, 227 Va. 517, 521-22, 317 S.E.2d 493, 496 (1984).

The right of action in *Princess Anne* was based on the failure to follow proper corporate procedure, as opposed to a fraud action. *Princess Anne*, at 61. The Bill of Complaint in this case in Count Three seeks to impose a constructive trust based on the failure to properly take the corporate action required to authorize the conveyance of the golf course land.

In this case, the Complaints' cause of action based on the golf course conveyance would have potentially accrued in 1987 assuming that the Friends of the Summit letter was distributed to the members of the Lake Holiday Country Club as the Defendants claim. At that time, the general membership of that entity would have had sufficient factual knowledge of the circumstances to arouse the suspicions of a reasonably prudent person, and if a constructive trust arose, it arose at that time, that is, from the time when it could have been judicially established. *See, e.g., Redford v. Clarke*, 100 Va. 115 (1902).

The imposition of a constructive trust is simply a remedy to recover property wrongfully in the hands of another, whether based on simple mistake, actual fraud, or other culpable conduct, which in this case would be the failure to follow proper corporate procedure. In *Princess Anne Hills Civic League, supra*, the doctrine of laches was applied, because there was no specific statute of limitations applicable to a suit for rescission of a deed based on the lack of the requisite corporate authority. The significance of this distinction based on the underlying right of action in the instant case is that while the statute of limitations applicable to fraud actions may bar the imposition of a constructive trust based on the fraud alleged in Count Two, the statute of limitations does not apply to the ultra vires right of action in Count Three of the Bill of Complaint absent a specific statute of limitations for challenging the actions of directors of nonstock corporations.

The Supreme Court recently considered the issue of the necessity of specific factual averments in a fraud action in *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295, 467 S.E.2d 778 (1996):

Initially, we observe, that "where fraud is relied on, the [pleading] must show specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defence accordingly, and since [fraud] must be clearly proved it must be distinctly stated." *Ciarochi v. Ciarochi*, 194 Va. 313, 315, 73 S.E.2d 402, 403 (1952) (quoting *Alsop v. Catlett*, 97 Va. 364, 370, 34 S.E. 48, 50 (1899)); *accord Campbell v. Bettius*, 244 Va. 347, 351, 421 S.E.2d 433, 435-36 (1992); *Tuscarora v. B.V.A. Credit Corp.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978); *Temple v. Jones, Son & Co.*, 179 Va. 286, 297, 19 S.E.2d 57, 61 (1942). We have stated that the elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation. *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994); *accord Nationwide Mut. Ins. Co. v. Hargraves*, 242 Va. 88, 92, 405 S.E.2d 848, 851 (1991); *Kitchen v. Throckmorton*, 223 Va. 164, 171, 286 S.E.2d 673, 676 (1982). Additionally, "[a] finding of ... constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation." *Alequin*, 247 Va. at 148, 439 S.E.2d at 390.

Here, the trial court properly sustained Bernick's demurrer because Mortarino failed to plead, with the requisite degree of particularity, facts which support all the elements of a cause of action for constructive fraud. For example, Mortarino failed to plead that Bernick knew or had reason to know that Mortarino would rely upon Bernick's alleged misrepresentations or that Bernick knew that his representations would be placed in a report that would be used to determine the value of the property.

Some torts, such as defamation and fraud, turn upon the exact words alleged to have been used, so in such cases the statements, or sometimes in the case of fraud the precise omissions, upon which the tort is premised must be specifically pleaded. Such cases may turn upon whether the statements alleged contain factual statements as opposed to an opinion, so the actual words upon which the tort of fraud is premised are critical to the pleading and the viability of the action.

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. Defendants' motion to dismiss the individual plaintiffs Bloomingdale and Keister is granted as to the Count Two, the fraud count, but denied as to Counts One and Three.

2. Defendants' Pleas of the Statute of Limitations to Count One, the constructive trust claim, and Count Two of the Bill of Complaint, the Fraud Count, are overruled, pending further factual development as to the Plaintiff Lake Holiday Country Club's exercise of due diligence in bringing its fraud action. On or before April 21, 1999, the Plaintiff shall file a bill of particulars setting forth the facts upon which they base their claim that they are subject to the due diligence exception to the statute of limitations for fraud.

3. Defendants' Pleas of Laches to the Constructive Trust Count, Count One, and the Ultra Vires Count, Count Three, of the Bill of Complaint are overruled pending further factual development. On or before April 21, 1999, the Defendants shall file a bill of particulars setting forth the facts upon which they base their defense of laches.

4. Defendant Simms' Demurrer to the Fraud Count, Count Two is sustained, and on or before April 21, 1999, the Plaintiff Lake Holiday Country Club shall file a bill particulars setting forth the specific misrepresentations of Simms, upon which the fraud count is predicated.

5. The filing of the respective bills of particulars under "2" and "3" above shall constitute a Request for Admissions served on the other party pursuant to Rule 4:11 that the statements are true, and that any document attached to the bill of particulars is genuine, or the person purportedly signing the statement would testify as stated therein, and it shall be responded to by the party receiving the Bill of Particulars within fourteen days from the receipt thereof in accordance with the Rules of Court governing responses to requests for admissions.

6. On or before April 7, 1999, the Defendants shall file a motion to release the lis pendens, which shall set forth the specific facts upon which their motion is based, and append thereto all documents which support their allegations. The Plaintiffs shall have twenty-one days from the receipt thereof to file such response thereto as deemed advisable. A hearing on the Defendants' Motion to release the lis pendens shall be held on May 20, 1999, at 4:00 p.m. Any other motions to be heard on May 20, 1999, must be filed and noticed for hearing on or before May 7, 1999.