Present:  All The Justices

PATRICK J. GOWIN

v.  Record No. 052240    OPINION BY JUSTICE ELIZABETH B. LACY
                                    September 15, 2006
GRANITE DEPOT, LLC, ET AL.

              FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                      Thomas D. Horne, Judge

        In this appeal, Patrick J. Gowin asks that we reverse the

judgment of the trial court dismissing his derivative suit

based on the trial court's conclusion that, because he failed

to make payments that he was obligated to make on a promissory

note securing his capital contribution to Granite Depot, LLC,

he had been properly terminated as a member of the company,

and therefore could not maintain this action.  For the reasons

stated below, we conclude that the promissory note was a

demand note and because no demand for payment was made,

Gowin's obligation to make payment on the promissory note had

not yet arisen.  Therefore, termination of Gowin's membership

in the company by the manager and majority member of the

company, John Stathis, was improper and Gowin remains a member

of Granite Depot, LLC.

                              FACTS

      In November 1998, John Stathis began operating a granite

countertop business.  He filed Articles of Organization

(Articles) in 1999 and was issued a certificate of

organization for Granite Depot, LLC. Stathis and his mother were members of the LLC, and Stathis acted as the manager. Shortly thereafter, Stathis offered Gowin employment and promised that after two years, Gowin would receive either 20% of the company or $250,000. Gowin accepted the employment offer and began working at Granite Depot in June 1999.

On November 9, 2000, Gowin became a member of Granite Depot, by amendment and restatement of the company's Operating Agreement (the Agreement). Stathis remained both a member and the manager of the company, but his mother's membership was terminated. Exhibit A to the Agreement set Stathis' percentage of membership interest in the LLC at 80% and his capital contribution at $50,000, while Gowin's percentage of membership interest was 20% and his capital contribution was $12,500. In conjunction with the amendment of the Agreement, Gowin signed a promissory note (the Note) payable to Granite Depot, LLC, in the amount of $12,500. However, at the time Gowin executed the Note, Stathis told him that the Note was " 'something [the company's lawyer] said had to be done' and that he was '. . . not to worry about it, the company would take care of it.' " Gowin made no payments on the Note, and Granite Depot made no demands for payment.

In 2001, the relationship between Stathis and Gowin began to deteriorate. Gowin left his employment position on May 31,

2

2002, but he did not resign his membership in the company. Stathis, acting as "Manager/Member," amended the Articles on November 30, 2002, to allow the members by majority vote to eliminate any other member who "fails to make any contribution or promise to contribute that he is obligated to make."  See Code § 13.1-1027(D).  On that same date, Stathis as the majority member, executed a written consent of members eliminating Gowin as a member of the LLC for failing "to make his required contribution to the Company by defaulting on the promissory note he executed."

After receiving notice that his membership in the LLC had been eliminated, Gowin filed this action entitled "Derivative Suit by a Member of Granite Depot, L.L.C.," alleging, that Stathis, as manager and 80% owner, had inflicted upon Granite Depot "irreparable harm" by

> a) act[ing] in bad faith, and in a manner that is
> illegal, oppressive and fraudulent in that he has
> operated the Company for his personal benefit; b)
> fail[ing] to discharge his duties in accordance
> with good faith business judgment for the best
> interests of the Company; and c) pa[ying] himself
> directly, and indirectly, grossly excessive
> compensation; and d) engag[ing] in acts of self-
> dealing.

Gowin requested an accounting, judicial expulsion of Stathis as a member of the LLC, and costs and attorneys fees.

Following a hearing, the trial court issued an opinion letter holding that amending the Articles to allow termination

of membership for failure to meet the capital contribution requirement was not a breach of fiduciary duty but that Stathis' "unwillingness to recognize the waiver of payment" was a breach of that duty. Based on these findings, the Court concluded it was unnecessary to consider other arguments made by the parties.

Stathis and Granite Depot filed a motion for reconsideration arguing that Stathis' waiver of payment on the Note was insufficient to bind Granite Depot. The trial court, commenting that "[a]bsent a finding of waiver" it "would conclude" that Gowin's membership was properly terminated thus leaving Gowin without standing to prosecute this derivative action, granted the motion for reconsideration only on the waiver issue.

After further briefing and argument of counsel, the trial court dismissed Gowin's derivative action, holding that, although Stathis waived payment of the Note,

> [a]bsent from the record is any evidence that the corporation affirmed the actions of Mr. Stathis, or that his actions affected third parties. Any informality in the way in which the business affairs of Granite Depot were conducted does not . . . trump the formal requirements necessary to afford the Complainant relief in this derivative action.

4

Accordingly, the trial court held that Gowin's membership interest had been properly eliminated and dismissed Gowin's derivative action. We awarded Gowin an appeal.

DISCUSSION

Gowin assigns six errors to the trial court's rulings: one contends Stathis could and did bind the LLC with his waiver, two argue Stathis acted unlawfully in eliminating Gowin's membership interest based on Gowin's failure to pay the Note, two allege Stathis violated his fiduciary duties by adopting an amendment allowing termination of membership for failure to pay a required capital contribution and using that amendment to eliminate Gowin's membership, and the final assignment of error asserts that the trial court erred in not holding that Stathis was equitably estopped from eliminating Gowin's membership.[1]

## Payment Waiver

We begin with Gowin's claim that the trial court erred in holding that Granite Depot was not bound by Stathis' waiver of

---

[1] We reject Stathis' claim that Gowin is procedurally barred from pursuing this appeal because he did not challenge the trial court's factual finding that he was not a member of the company and because he conceded throughout his brief that he was not a member of the company when he instituted this action as required by Code § 13.1-1043. Gowin continually argued in the trial court and on appeal that Stathis' "elimination" of Gowin's membership was invalid because Stathis' actions were illegal or in violation of his fiduciary

5

Gowin's liability on the Note.  If Gowin is correct, his capital contribution obligation would have been satisfied, leaving no basis for termination of Gowin's membership in the company under the amendment Stathis adopted.

Code § 13.1-1027(C) provides that a member's obligation to make a contribution "may be compromised only by consent of all the members" unless the operating agreement or articles of organization provide otherwise.  Furthermore, Code § 13.1-1022(E) allows corporate actions to be taken outside the context of a meeting only when the requisite number of members sign a document reflecting the action taken and their consent to it.  In this case, neither the Articles nor the Agreement contains any provision addressing the compromise of a member's obligation to make a capital contribution.  The Articles authorize action by written consent in the absence of a meeting in the same manner as set out in Code § 13.1-1022(E). Therefore, all the members of Granite Depot had to consent to any waiver of Gowin's capital contribution and if such consent did not occur at a meeting of the members, it was valid only if reflected in a written document signed by all the members.

Gowin argues that the consent requirements of Code § 13.1-1027(C) were met because the only two members of the

duties.  Therefore, Gowin has preserved the issue of his membership status for consideration in this appeal.

LLC, Gowin and Stathis, were present at the November 2000 meeting when Gowin executed the Note and when Stathis stated that Gowin did not have to pay the Note and the company "would take care of it." Gowin asserts that this "meeting" fulfilled the consent requirement of Code § 13.1-1027(C), and, because there was such a "meeting," the written consent requirements of Code § 13.1-1022(E) are not applicable. Furthermore, Gowin asserts that the lack of written minutes or notice of the November 2000 meeting does not defeat Stathis' waiver of Gowin's obligation on the Note because Stathis managed Granite Depot's affairs in an informal manner and this closely held limited liability company should be bound by its informal actions.[2]

Gowin relies on the principle that, while formal corporate action is generally required to establish a valid corporate act, when stockholders, directors, and officers of close corporations ignore requirements of statutes and corporate by-laws and conduct business in an informal manner, their actions may nevertheless be binding on the corporation. Curley v. Dahlgren Chrysler-Plymouth Dodge, Inc., 245 Va. 429, 433-34, 429 S.E.2d 221, 224 (1993); Brewer v. First National

_____

[2] Gowin alternatively argues that he was not a member of Granite Depot until he signed the Note and Agreement and therefore only Stathis' consent was needed to waive payment of

7

<u>Bank of Danville</u>, 202 Va. 807, 812-13, 120 S.E.2d 273, 278 (1961); <u>Moore v. Aetna Cas. & Surety Co.</u>, 155 Va. 556, 568-70, 155 S.E. 707, 710-11 (1930). We have not previously applied this principle, sometimes called the "closed corporation" or "corporate formalities" rule, to limited liability companies, but we see no distinction in its application to corporations or limited liability companies.

A limited liability company is an entity that, like a corporation, shields its members from personal liability based on actions of the entity. <u>Cheatle v. Rudd's Swimming Pool Supply Co.</u>, 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987) ("The proposition is elementary that a corporation is a legal entity entirely separate and distinct from the shareholders or members who compose it. This immunity of stockholders is a basic provision of statutory and common law and supports a vital economic policy underlying the whole corporate concept."); Code § 13.1-1019 (limiting liability of members and managers of LLCs to third parties). We find no difference between the two entity forms that would justify applying the protection of the rule to actions of closely held corporations but not to actions of limited liability companies. To apply the principle, however, requires demonstration that the

---

the Note. We do not address this argument because it is made for the first time on appeal. Rule 5:25.

8

members and managers of the limited liability company conducted its business in an informal manner, ignoring statutory requirements or requirements set out in the articles of organization or operating agreement. See e.g., Curley, 245 Va. at 433-34, 429 S.E.2d at 224; Moore, 155 Va. at 567-68, 155 S.E. at 710-11.

Gowin cites a number of instances which he characterizes as informal corporate decisionmaking: (1) Stathis' oral agreement to award Gowin a 20% stake in the company; (2) a lack of notices or minutes of meetings; (3) Stathis' "substantial loans" to himself and other businesses without compliance with Section 4.02(a)(vi) of the Agreement which requires approval of members for company loans to members in excess of $25,000 or a term of one year; (4) Stathis' "recategoriz[ation of] numerous substantial financial transactions that enhanced his personal finances"; and (5) "[a]mbiguity" in Stathis' decision making process because although he fully controlled the business by virtue of his 80% interest and his status as manager, he still signed written consents and other documents as "Member/Manager." We reject Gowin's argument that these examples evidence a disregard for compliance with corporate formalities.

First, the original promise of employment and ambiguity in decision making do not involve violations of a statute or a

provision of the Agreement pertaining to company formalities. While the original promise may have been oral, the "members" approved the transfer of a 20% membership interest in Granite Depot, LLC, by written document dated January 10, 2002 for Fiscal Year 2000, and Gowin's 20% membership interest appears in Exhibit A to the Amended and Restated Operating Agreement. Also, the fact that Stathis signed company documents as a "Member/Manager" was not improper as he held both positions and was entitled to take such company actions as manager.

Second, while the loans and recategorization of financial transactions implicate certain provisions of the Agreement, the record does not support Gowin's contention that Stathis violated those provisions. Stathis and Granite Depot's accountant explained that both Gowin and Stathis charged company and personal expenses to company credit cards, the latter of which they had to reclassify for income tax purposes. Some of these personal expenses Stathis reclassified as loans, but according to his testimony, in each case the "loan" was for a sum of $25,000 or below for which he did not need consent under Section 4.02(a)(vi) of the Agreement.

Stathis also made a loan of $70,000 to Plan-It Construction, a business in which he was part owner. He later reclassified the loan as additional compensation. At trial,

10

he testified that this additional compensation was justified because Plan-It Construction was a "complementary business" that increased Granite Depot's sales. Gowin did not provide evidence to refute this allegation, nor did he allege that this compensation violated Section 5.08 of the Agreement, which mandates "reasonable" salaries. Stathis also testified that he repaid all loans from the company and that he never excluded Gowin from company distributions, as the only compensation he and Gowin received was their salary. The company's accountant testified that the accounting practices he employed at Granite Depot of adjusting journal entries to correct accounting mistakes was "pretty standard procedure . . . with all [his] clients." Though Granite Depot's accounting practices may have been in some respects ill-advised, they do not implicate a disregard for company formalities.

Finally, the record contains the Articles, amended Articles, the Agreement, minutes of company actions and documents showing waivers of notice and consent to company actions for fiscal years 2000 and 2001, as well as other written amendments to the Articles. These documents reflect consistent compliance with company formalities regarding the conduct of company business, including consent to and authorization of company actions.

Other than the purported waiver of Gowin's obligation under the promissory note, nothing in this record indicates that Stathis acted beyond the authority vested in him as manager or controlling member of Granite Depot or that the company otherwise conducted its business in an informal manner, ignoring the requirements of the statutes, Articles, or Agreement.  Thus, even if the events of November 2000 took place at a meeting of the members of the company, as contended by Gowin, we cannot say that the trial court erred in concluding that Stathis' oral waiver of Gowin's Note obligation to the company was insufficient to bind Granite Depot in the absence of written documentation reflecting consent of the members.[3]

Termination

In two other assignments of error, Gowin argues that even if Stathis' waiver was not effective to bind the company, Stathis could not terminate Gowin's membership in the company for failure to meet his capital contribution obligation.  First, Gowin asserts that delivery of the Note satisfied his

---

[3] The record does contain a "Written Consent in Lieu of the Joint Meeting of the Members and Managing Members of Granite Depot, LLC, For Fiscal Year 2000" signed by John Stathis which "ratified, confirmed and approved . . . all of these acts and the other acts and actions of the Members and Managing Members" for the year 2000.  Gowin did not, however, rely on this document as written evidence of consent to the

12

capital contribution obligation to the company.  Implicit in Gowin's argument is the notion that delivery of the Note alone makes him a member of the LLC and satisfies the contribution requirement without further payment on the Note.  We agree that delivery of the Note qualified Gowin for membership but reject the proposition that such delivery eliminated his liability under the Note as a condition of membership.

A provision in an operating agreement allowing a member's promissory note to satisfy the capital contribution requirement is an accommodation that allows a person to become a member before paying the full amount of the required capital contribution to the company at the moment of membership.  The failure to pay the promissory note in accord with its terms, however, would be a failure to meet the capital contribution requirements.  As stated in Code § 13.1-1027(D), discussed above, a member may be removed for failure to make "any contribution that he is obligated to make."  This provision applies to both initial and subsequent capital contribution requirements.  Thus, if a person becomes a member by delivering a promissory note as allowed by an operating agreement, his failure to make payment on such note is a failure to make a contribution he "is obligated to make."  Cf.

waiver of the Note before the trial court, and thus we do not consider it for this proposition.  Rule 5:25.

13

<u>Morriss v. Harveys & Williams</u>, 75 Va. 726, 730-31 (1881) (debtor's note not payment of antecedent debt, only conditional payment and debt extinguished when actually paid). The delivery of the Note did not relieve Gowin of his obligation to pay the capital contribution he was required to make.

Next Gowin asserts that the Note was a demand note and, because no demand for payment had been made, he had not failed to make a contribution he was obligated to make and therefore, under the terms of the termination amendment, his membership could not be terminated.

Code § 8.3A-108(a) defines a demand note as a note that "(i) states that it is payable on demand or at sight, or otherwise indicates that it is payable at the will of the holder, or (ii) does not state any time of payment." A note payable at a definite time, in contrast, "is payable on elapse of a definite period of time . . . or at a fixed date or dates." Code § 8.3A-108(b).

The Note in this case is dated January 15, 2000 in the amount of $12,500 at 9% annual interest "payable in twenty-four (24) monthly installments . . . commencing on February 1, 2000, [with] each successive payment due on the first (1st) day of each and every month thereafter until fully paid." It purports to be a note payable at a definite time because it

14

states the first payment is due February 1, 2000, while remaining payments are due "on the first (1st) day of each and every month thereafter until fully paid." Nevertheless, the stated execution and initial payment dates precede the actual execution date of the Note, November 9, 2000, making compliance with the stated dates impossible.

The parties in this case agree that the dates appearing on the face of the Note are incorrect, but neither asserts that such mistakes invalidate the Note. Although we have held that a note with no stated time for payment is a demand note, Guth v. Hamlet Associates, 230 Va. 64, 71, 334 S.E.2d 558, 563 (1985), we have not previously considered whether a note with incorrect or impossible dates of issue or payment is a demand or an installment note. Because of the error in the payment dates in this Note, the Note is effectively a note that states no date of payment and is, therefore, a demand note under the provisions of Code § 8.3A-108(a)(ii). Cf. Ranieri v. Terzano, 457 N.E.2d 906, 909-10 (Ohio App. 1983) (construing promissory note with blank line after printed word "Due" as demand note rather than determining note was incomplete and unenforceable because parties "evidently regarded the note as a binding obligation"); see also Citibank v. Pitassi, 432 N.Y.S.2d 389, 390 (N.Y. App. Div. 1980).

As relevant here, a demand note does not become overdue until the day after demand is made or the instrument has remained outstanding for an "unreasonably long [time] under the circumstances," whichever occurs first. Code §§ 8.3A-304(a)(1), (3). This demand note never became overdue because neither Stathis nor Granite Depot ever demanded payment, and the record does not contain evidence of an unreasonable delay in nonpayment under the circumstances. Thus, though the Note "mature[d] and [became] payable at once," Guth, 230 Va. at 72, 334 S.E.2d at 564, it never became overdue and Gowin never failed to make a payment "he was obligated to make." As a result, Stathis' termination of Gowin's membership based on nonpayment of the Note representing Gowin's capital contribution was improper and Gowin remains a member of Granite Depot, LLC.

## Breach of Fiduciary Duty

Gowin asserts that the trial court erred in holding that Stathis did not violate his fiduciary duty to Granite Depot by amending the Articles to allow elimination of a member for nonpayment of capital contribution and second by eliminating Gowin's membership without seeking to enforce the Note.

Gowin acknowledges that Subsection D of Code § 13.1-1027 authorizes an LLC to provide that a member's interest in the LLC can be terminated if he or she "fails to make any

16

contribution that he is obligated to make;" nevertheless, relying on <u>Flippo v. CSC Assocs.</u>, 262 Va. 48, 57, 547 S.E.2d 216, 222 (2001), Gowin argues that by adding this provision to the Articles, Stathis breached his fiduciary duty because Stathis' sole purpose in making the amendment was to eliminate Gowin's membership interest.

Whether an act constitutes a breach of fiduciary duty will depend on the circumstances of each case. <u>See</u> <u>Feddeman & Co. v. Langan Assocs.</u>, 260 Va. 35, 42, 530 S.E.2d 668, 672 (2000). Based on the record in this case, however, we cannot say that the trial court erred in holding that Stathis did not breach his fiduciary duty to the company when he adopted the amendment at issue.

The purpose of the amendment at issue is to ensure that the company receives capital contributions to which it is entitled under the terms of the Agreement and to preclude a member from realizing a benefit from membership without satisfying his financial obligations to the company. Stathis testified that he adopted the amendment both for the benefit of the company and to make elimination of Gowin's membership interest possible. There is no evidence that adoption of the amendment alone had any impact on the company or was otherwise a breach of fiduciary duty to the company.

CONCLUSION

17

In summary, we hold that there was no error in the trial court's judgment that Stathis' waiver of Gowin's obligation on the Note did not bind Granite Depot, LLC, and that amendment of the Articles of Organization to provide for termination of a member's interest in the LLC upon failure to make a required capital contribution was not a breach of fiduciary duty. However, because we conclude that the Note was a demand note and no demand was made for payment, Gowin's membership in Granite Depot could not be terminated based on a failure to make a capital contribution pursuant to the terms of that amendment and, therefore, Gowin remains a member of Granite Depot, LLC.[4] Accordingly, we will remand the case for further proceedings consistent with this opinion.

<u>Affirmed in part, reversed in part, and remanded.</u>

---

[4] In light of these holdings, we need not address Gowin's other assignment of error.