PRESENT: All the Justices

ERIE INSURANCE EXCHANGE

v. Record No. 180120

EPC MD 15, LLC

OPINION BY
JUSTICE D. ARTHUR KELSEY
JANUARY 17, 2019

FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
Clifford L. Athey, Jr., Judge

EPC MD 15, LLC ("EPC") was a named insured on a commercial property policy issued by Erie Insurance Exchange ("Erie"). EPC sued Erie and claimed coverage for fire damage to a building owned by a subsidiary of EPC. The subsidiary, however, was not a named insured, and no provision of the policy identified the subsidiary as an additional insured. On cross-motions for summary judgment, the circuit court held that EPC's ability to control its subsidiary meant that, for insurance-coverage purposes, EPC thereby acquired all of the subsidiary's property under a coverage-extension provision in the policy.

Having found that coverage existed for the loss, the court entered final judgment for EPC and awarded the agreed-upon damages. On appeal, Erie contends that the circuit court misinterpreted the coverage-extension provision and found coverage where there was none. We agree and reverse.

I.

EPC is a limited liability company organized under Maryland law. EPC purchased an insurance policy from Erie that was issued for one year beginning on June 15, 2013. At the time of the purchase, EPC owned real property in Maryland. The policy identified EPC as the named insured and covered fire damage among other losses. No policy provision defined the term "named insured" to include EPC's subsidiaries. The policy defined "'you' and 'your'" to "refer

to the Named Insured shown in the 'Declarations.'" J.A. at 56. The Declarations pages identified EPC as the named insured and described the property interest that the policy covered as the "interest of named insured in such premises — owner." *Id.* at 39, 41 (omitting capitalization).

The policy included various "Extensions of Coverage." *Id.* at 70. One such provision covered buildings newly "acquired" by EPC after the issuance of the policy. *Id.* at 78. The pertinent language read: "If this policy covers Building(s), *you* may extend that insurance . . . on . . . [n]ewly acquired buildings at other than the location(s) described in the 'Declarations'" as well as "[n]ew additions, new buildings and new structures when constructed on the insured premises." *Id.* (emphasis added). The policy did not define the term "acquired." *See id.* at 83-84.

Another coverage-extension provision applied to "Business Personal Property" newly acquired by EPC and to "Personal Property of Others" located in a building newly "acquired or leased" by EPC. *Id.* at 78. The policy also extended coverage for loss of income associated with damage to, among other things, "[n]ewly acquired Buildings or Business Personal Property and Personal Property of Others in a newly leased building." *Id.* None of these provisions, however, expressly extended coverage to the buildings of others. Further, the policy included a provision that provided coverage for "[p]ersonal property of others that is in your [EPC's] care, custody, or control." *Id.* at 57. The policy also included a provision applicable to buildings, inter alia, that excluded coverage for any "[i]ntentional loss, meaning any 'loss' arising from an act committed by or at the direction of the insured with the intent to cause a 'loss.'" *Id.* at 60.

The Declarations pages of the policy listed EPC's Maryland property and no other. Approximately nine months after Erie had issued the policy, EPC acquired the sole membership

2

interest in Cyrus Square, LLC ("Cyrus Square"), a limited liability company organized under Virginia law.[1] Cyrus Square owned a building located in Winchester, Virginia.

Within 90 days of EPC acquiring this membership interest in Cyrus Square,[2] a fire damaged the building that Cyrus Square owned in Winchester. EPC's counsel filed a demand for coverage, identifying "EPC MD 1[5], LLC, and/or Cyrus Square LLC" as the "Insureds." *Id.* at 18, 165. After Erie denied coverage, EPC filed suit and claimed that, while Cyrus Square was not a named insured, EPC clearly was — and EPC had "acquired" the fire-damaged property when EPC became the sole member of Cyrus Square. Upon this basis, EPC sought to trigger the policy's coverage-extension provision for newly acquired buildings of the named insured. On cross-motions for summary judgment based upon stipulated facts, the circuit court agreed with EPC by holding that the word "acquired" is ambiguous and hence should be construed against Erie as the drafter. The court entered final judgment in favor of EPC against Erie.

II.

On appeal, Erie argues that the circuit court misread the policy language and found an ambiguity where none existed.[3] In context, Erie contends, the coverage-extension provision for

---

[1] Though most common in the vocabulary of incorporated entities, the term "subsidiaries" also applies to LLCs organized under the Virginia Limited Liability Company Act. *See, e.g.*, Code § 13.1-1009(9) (stating that "[u]nless the articles of organization provide otherwise," an LLC has the power "[t]o pay pensions and establish pension plans . . . for . . . any of its subsidiaries").

[2] The policy stated that the extensions would "apply for 90 days after the acquisition or start of construction, provided the policy remains in force or is renewed." J.A. at 78.

[3] Seeking a dismissal of this appeal, EPC contends that Erie did not timely file "exceptions" to the circuit court's penultimate order, Appellee's Br. at 14 (referring to the order entered April 20, 2017), pursuant to a provision therein directing the parties to "file their exceptions" within 10 days of that order, J.A. at 265. We cannot dismiss this appeal on that ground. By statute, "[f]ormal exceptions to rulings or orders of the court shall be unnecessary," and "it shall be sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take . . . and his

newly acquired buildings cannot be fairly read to apply to property of a newly acquired subsidiary that is neither a named nor an additional insured on the parent company's policy. Nor can this provision be reasonably read to mean that a parent company "acquires" the real property of a subsidiary merely by virtue of the creation of a parent-subsidiary relationship after issuance of the policy at issue. We agree.

A.

"In an appeal from a circuit court's decision to grant or deny summary judgment, this Court reviews the application of law to undisputed facts de novo." *St. Joe Co. v. Norfolk Redev. & Hous. Auth.*, 283 Va. 403, 407 (2012). "At the center of this appeal is the construction and application of the terms of an insurance contract, which are issues of law that we review de novo." *Bratton v. Selective Ins. Co. of Am.*, 290 Va. 314, 322 (2015).

The canons of construction that generally govern contracts also apply to insurance policies specifically. *See Liverpool & London & Globe Ins. v. Bolling*, 176 Va. 182, 192 (1940). Except when interpreting statutorily required clauses, which must conform to the intention of the lawmakers rather than the intention of the contractual parties,[4] Virginia courts "interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the document," *TravCo Ins. v. Ward*, 284 Va. 547, 552 (2012); *see Dairyland Ins. v. Douthat*, 248 Va. 627, 631 (1994) ("If the terms of an insurance policy do

---

grounds therefor." Code § 8.01-384(A). Erie's summary judgment motion had previously made "known to the court the action which [Erie] desire[d] the court to take . . . and [its] grounds therefor." *Id.*

[4] *See, e.g.*, *Bratton*, 290 Va. at 329 (interpreting statutorily required uninsured-and-underinsured-motorist clause, and stating that "we will not consider language in a policy that, arguably, is inconsistent with the statute as we have construed it" (citation omitted)); *Government Emps. Ins. v. United Servs. Auto. Ass'n*, 281 Va. 647, 657-59 (2011) (interpreting statutorily required omnibus clause).

4

not conflict with any provision of law, the terms of the contract, as written, will govern and limit the extent of recovery under the policy."). In the context of insurance policies, this rule means that a judicial interpretation should conform to the plain meaning that reasonable insurers and insureds likely would have attributed to the words.[5]

The search for this plain meaning does not myopically focus on a word here or a phrase there. Instead, it looks at a word in the context of a sentence, a sentence in the context of a paragraph, and a paragraph in the context of the entire agreement. The plain meaning of a word depends not merely on semantics and syntax but also on the holistic context of the word within the instrument. Consequently, every word, clause, and provision of the policy "should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done, so as to effectuate the intention of the parties as expressed therein."

---

[5] Erie issued and delivered the policy to a Maryland company to cover, at least initially, property in Maryland. Under Virginia choice-of-law principles, we would ordinarily look to the law of the place where an insurance contract was made, that is, where it was written and delivered, to determine the controlling principles of contract interpretation. *See Buchanan v. Doe*, 246 Va. 67, 70, 74 (1993); *Woodson v. Celina Mut. Ins.*, 211 Va. 423, 426 (1970). By statute, however, "[a]ll insurance contracts on or with respect to the ownership, maintenance or use of property in this Commonwealth shall be deemed to have been made in and shall be construed in accordance with the laws of this Commonwealth." Code § 38.2-313. Neither party on appeal mentions this statute or questions whether it applies solely to third-party liability insurance on property located in this Commonwealth or also to first-party property insurance on such property. *See generally* Code §§ 38.2-2204, -2205 (using the "ownership, maintenance or use" phrase in the third-party liability insurance context); 1 Rowland H. Long et al., The Law of Liability Insurance § 1.24, at 1-102 to -131 (1990) (addressing the "ownership, maintenance or use" phrase in the third-party liability insurance context). We offer no opinion on the question whether Code § 38.2-313 applies to this case.

We also take no position on how this case should be decided under Maryland law. Neither party has addressed Maryland law in sufficient detail for us to confidently predict how a Maryland court would resolve this case, and we do not take upon ourselves the task of researching foreign law either to support or to defeat a litigant's argument. Instead, "[i]n the absence of a showing to the contrary, we presume that foreign law — whether applicable because of a choice-of-law clause or because of nonconsensual choice-of-law principles — is the same as the law of the forum." *Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 370 n.6 (2017). Virginia law, therefore, will guide our decision in this case.

*Floyd v. Northern Neck Ins.*, 245 Va. 153, 158 (1993) (citation omitted). "[I]f they are clear and unambiguous, their terms are to be taken in their plain, ordinary and popular sense." *Government Emps. Ins. v. Moore*, 266 Va. 155, 164 (2003) (citation omitted).

If the plain meaning is undiscoverable, Virginia courts apply the contra proferentem canon, which construes ambiguities against the drafter of the ambiguous language. *See TravCo Ins.*, 284 Va. at 553. In insurance cases, the disfavored drafter is almost always the insurer. That fact alone counsels caution because of the analytical ease with which a court may give up quickly on the search for a plain meaning by resorting to the truism that a great many words — viewed in isolation — have alternative, and sometimes quite different, dictionary meanings. If we took this approach, the contra proferentem thumb-on-the-scale would apply to nearly every interpretation of nearly every insurance policy. Our prior opinions have recognized this temptation and resisted it. *See, e.g.*, *Appalachian Reg'l Healthcare v. Cunningham*, 294 Va. 363, 375 n.10 (2017); *Bartolomucci v. Federal Ins.*, 289 Va. 361, 370-71 (2015); *Transit Cas. Co. v. Hartman's, Inc.*, 218 Va. 703, 708 (1978); *Travelers Indem. Co. v. Ford*, 208 Va. 151, 155 (1967); *Combs v. Hunt*, 140 Va. 627, 634-35, 643 (1924).

Under Virginia law, conflicting interpretations reveal an ambiguity only where they are reasonable. *See Caldwell v. Transportation Ins.*, 234 Va. 639, 643 (1988) (recognizing that an ambiguity exists where "reasonable men . . . may reach *reasonable*, but opposite, conclusions" regarding the meaning of the disputed provision (emphasis added) (citation omitted)); *United States Mut. Accident Ass'n v. Newman*, 84 Va. 52, 58-59 (1887) (adopting a construction favoring the insured "where it can be *fairly claimed* that two constructions can be placed upon the language used in the policy" (emphasis added)). A "reasonable" or "fairly claimed" interpretation is one arising from two competing interpretations that are "equally possible" given

6

the text and context of the disputed provision. *Appalachian Reg'l Healthcare*, 294 Va. at 375 n.10 (citation omitted); *see also PBM Nutritionals, LLC v. Lexington Ins.*, 283 Va. 624, 633-34 (2012).

The fact that one may hypothesize "opposing interpretations" of the same contractual provision does "not necessarily render the contract ambiguous" because "[a]s we have often said, '[a] contract is not ambiguous simply because the parties to the contract disagree about the meaning of its language.'" *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179 (2016) (second alteration in original) (citation omitted). Instead, in our search for the plain meaning of "any part of a contract, we will construe the contract as a whole, striving not to 'place emphasis on isolated terms' wrenched from the larger contractual context." *Id.* at 179-80 (citations omitted).

## B.

These observations put us at odds with the circuit court's reasoning. Focusing on the word "acquired" in the disputed coverage-extension provision, the court turned to dictionary definitions that offered a range of meanings from outright ownership of the thing acquired by "get[ting] as one's own," to simple "possession" of it, and to mere "control" over it. J.A. at 261 (quoting Black's Law Dictionary and Merriam-Webster's Dictionary). Concluding that "an ambiguity does exist as to the meaning of acquired," *id.* at 263-64, the circuit court adopted the mere *control* denotation and applied it to the undisputed facts of this case. From there, the court concluded: "Here, there is no question that [EPC] gained control of the property by virtue of its control of Cyrus Square LLC and thus 'acquired' the property." *Id.* at 263. We find this reasoning unconvincing.

1.

Created to amalgamate characteristics of both partnerships and incorporated entities, an LLC is a "legal entity entirely separate and distinct from the . . . members who compose it," *Mission Residential, LLC v. Triple Net Props., LLC*, 275 Va. 157, 161 (2008). Consequently, a "transfer of property from a member to the [LLC] is more than a change in the form of ownership; it is a transfer from one entity or person to another." *Hagan v. Adams Prop. Assocs.*, 253 Va. 217, 220 (1997). "[A]ny claim regarding its assets must be pursued by, and in the name of, the LLC." 10 William R. Waddell & Lee A. Handford, Virginia Practice Series: Business Entities § 1:15, at 29 (2018 ed.). "And this rule applies with equal force even though the LLC has only a single member." *Id.* n.3.

When an LLC acquires an estate or a property interest, "title to any estate or interest so acquired vests in the limited liability company," Code § 13.1-1021, not in its members. *See General Tech. Apps., Inc. v. Exro Ltda.*, 388 F.3d 114, 118-19 (4th Cir. 2004). When a member acquires an interest in an LLC, the "membership interest . . . is *personal property*. The *only* transferable interest of a member in the limited liability company is the member's share of the profits and losses of the limited liability company and the member's right to receive distributions." Code § 13.1-1038 (emphases added); *see* 10 Waddell & Handford, *supra*, § 1:15, at 31 & n.9.

Despite its tolerance for informal management, the LLC's structural form "shields its members from personal liability based on actions of the entity," *Gowin v. Granite Depot, LLC*, 272 Va. 246, 254 (2006); *see* Code § 13.1-1019 (stating the general rule against personal liability and noting the existence of exceptions). Hence, a member of an LLC is generally "not a proper party to a proceeding by or against [that member's] limited liability company." Code § 13.1-

8

1020. These attributes of an LLC do not change merely because the LLC has only one member. As one federal court has succinctly stated: "The LLC structure would have no meaning if single-member LLCs were one and the same with the single member." *Jeb Stuart Auction Servs., LLC v. West Am. Ins.*, 122 F. Supp. 3d 479, 484 (W.D. Va. 2015).[6]

2.

Aware of these background principles, the circuit court correctly observed that EPC could *indirectly* buy, sell, or encumber Cyrus Square's property simply by going through the motions of making Cyrus Square effectuate EPC's will. The court incorrectly concluded, however, that this indirect control was tantamount to EPC *acquiring* all of Cyrus Square's real property. While there may be other contexts in which the court's reasoning would be sound, we do not think it works in the framework of this particular insurance policy.

If control of a mere membership interest were enough, every named insured owning a controlling interest in an LLC could be said to have *acquired* the controlee's property for purposes of a similar coverage-extension provision — even though the insurer had no underwriting information necessary to make a risk assessment and established no premium rating on the de facto insured that actually owned the newly acquired property. To take EPC's logic even further, the same would be true of a named insured that purchases a controlling interest in one LLC that itself purchases a controlling interest in yet another LLC. Under EPC's

---

[6] Though tailored to the intended informalities that LLCs have by statute, the doctrine of piercing the corporate veil applies to LLCs as well as to corporations. *See, e.g.*, *Gowin*, 272 Va. at 254 ("We have not previously applied this principle, sometimes called the 'closed corporation' or 'corporate formalities' rule, to limited liability companies, but we see no distinction in its application to corporations or limited liability companies."); *A.G. Dillard, Inc. v. Stonehaus Constr., LLC*, Record No. 151182, 2016 WL 3213630, at *2 (Va. June 2, 2016) (unpublished) ("[I]n rare instances, a limited liability company's corporate veil may be pierced to hold a member personally liable.").

9

interpretation, the first LLC member, the named insured, would thereby "acquire" the buildings owned exclusively by both LLCs (and others ad infinitum) through the daisy chain of control. We believe that the provisions of Erie's policy render that interpretation unreasonable.

As noted earlier, the pertinent coverage-extension provision states that "you" may extend coverage for "[n]ewly acquired buildings." J.A. at 78. The policy defines "you" to mean the "Named Insured shown in the 'Declarations'" of the policy. *Id.* at 56. The Declarations pages identify EPC as the named insured, *id.* at 39, and describe the property interest that the policy covers as the "interest of named insured in such premises — owner." *Id.* at 41 (omitting capitalization). Thus, the Declarations pages not only identify EPC (not Cyrus Square or any other entity) as the named insured but also imply that the "interest" of the named insured is its ownership interest in the premises covered by the policy. *Id.* at 39, 41.[7]

That ownership implication, standing alone, might not be dispositive in rendering EPC's interpretation unreasonable. But it is bolstered by the fact that other provisions of the policy specifically protect the interests of others besides the named insured. The policy, for example, includes a coverage provision for "[p]ersonal property *of others* that is in *your* [EPC's] care,

_____

[7] EPC asserts that, as the sole member of Cyrus Square, EPC has an insurable interest in the building owned by Cyrus Square. Perhaps so. *See* Code § 38.2-303 (defining "insurable interest" as "any lawful and substantial economic interest in the safety or preservation of the subject of insurance free from loss, destruction or pecuniary damage"); *Liverpool & London & Globe Ins.*, 176 Va. at 189 ("Any person who has an interest in the property, legal or equitable, or who stands in such a relation thereto that its destruction would entail pecuniary loss upon him, has an insurable interest to the extent of his interest therein, or of the loss of which he is subjected by the casualty." (citation omitted)). *See generally* 3 Steven Plitt et al., Couch on Insurance 3d § 41:11, at 41-29 to -33 (rev. ed. 2011). But that conclusion, if true, proves little. Possessing an insurable interest is a necessary, but not always sufficient, condition for coverage. The existence and scope of coverage, if any, depends upon the correct interpretation of the insurance policy. *See, e.g.*, *Hall, Inc. v. Empire Fire & Marine Ins.*, 248 Va. 307, 310 (1994) ("The issue in the present case, however, is not whether [the insured] had an insurable interest in the automobile, but is whether [he] had coverage, under the terms of the Policy, for the automobile's loss.").

10

custody, or *control*." *Id.* at 57 (emphases added). The policy also extends potential "Income Protection" coverage for loss of income associated with "[n]ewly acquired Buildings or Business Personal Property and Personal Property of *Others*." *Id.* at 78 (emphasis added). These property-of-others provisions are incongruent with the supposition that the insured acquires as its own the property of others merely by exercising "care, custody, or control" over it.

The flaw in EPC's interpretation is further revealed by the way that this interpretation interacts with the standard subrogation provision in the policy. That provision states that after Erie makes "a payment under this policy," Erie as a subrogee may sue "anyone else" other than EPC (the named insured) for reimbursement. *Id.* at 48. If Erie does so, EPC must cooperate with and affirmatively assist Erie in pursuing the subrogation claim. Consider the scenario in which a disgruntled employee of Cyrus Square sets fire to his employer's property. Under EPC's interpretation, after Erie had paid EPC for the loss, EPC would be obligated to assist Erie in recovering those very payments from the disgruntled employee of EPC's own subsidiary and, if respondeat superior principles permitted it, directly from the subsidiary itself.

A similarly peculiar result arises when EPC's interpretation is paired with the policy exclusion for any "[i]ntentional loss, meaning any 'loss' arising from an act committed by or at the direction of the insured with the intent to cause a 'loss.'" *Id.* at 60.[8] Because EPC (not Cyrus Square) is the insured, this exclusion would apply to a loss intentionally caused by EPC but not by Cyrus Square. Thus, under EPC's view, the coverage-extension provision would not only extend the scope of coverage to property owned by Cyrus Square but, after doing so, would

---

[8] *Cf.* J.A. at 73 (excluding coverage for certain personal property "[l]oss caused by any dishonest or criminal act committed by you, or any of your members of a limited liability company, or any of your partners, whether acting alone or in collusion with other persons").

11

then shed a major coverage exclusion in the process that would otherwise deny coverage if Cyrus Square, the property owner, intentionally caused the loss.

In short, the Declarations in the policy, the language in the coverage and coverage-extension provisions, and the language in the subrogation and exclusion provisions all undermine the reasonableness of EPC's argument that, merely because it had "control" over Cyrus Square, EPC "acquired" the real property of Cyrus Square. It is a creative argument, to be sure, but a little too creative to be "equally possible," *Appalachian Reg'l Healthcare*, 294 Va. at 375 n.10, as Erie's more common-sense interpretation — that EPC, the named insured, needed to actually acquire the *property*, not merely acquire the property owner, for the relevant coverage-extension provision to apply.

### III.

Because the Erie policy did not cover the damaged property of Cyrus Square, the circuit court erred in granting EPC's motion for summary judgment and in denying Erie's motion for summary judgment. We thus enter final judgment in favor of Erie and dismiss EPC's claim with prejudice.

*Reversed and final judgment.*