**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 25-1977**

───────────

NAVIGATORS SPECIALTY INSURANCE COMPANY,

Plaintiff - Appellant,

v.

AVERTEST, LLC; COLUMBIA CASUALTY COMPANY,

Defendants - Appellees.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:24−cv−00932−LMB−WBP)

───────────

Argued:  May 7, 2026                                    Decided:  June 9, 2026

───────────

Before GREGORY, THACKER, and BENJAMIN, Circuit Judges.

───────────

Vacated and remanded by unpublished per curiam opinion.

───────────

**ARGUED:**  Jonathan Freiman, WIGGIN AND DANA LLP, New Haven, Connecticut, for Appellant.  Margaret Fonshell Ward, DOWNS WARD BENDER HERZOG & KINTIGH, P.A., Hunt Valley, Maryland; Harold E. Johnson, WILLIAMS MULLEN, Richmond, Virginia, for Appellees.  **ON BRIEF:**  David R. Roth, WIGGIN AND DANA LLP, New Haven, Connecticut, for Appellant.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case centers on a dispute between two insurance companies -- Columbia Casualty Company ("Columbia") and Navigators Specialty Insurance Company ("Navigators"). Columbia and Navigators disagree as to which company, if either, is responsible for providing coverage for a claim against one of their insureds, Avertest, LLC. Navigators provided coverage at the time of the claim but later filed suit, alleging that Columbia was legally obligated to provide coverage. Navigators argued that Columbia was responsible for coverage because the disputed claim was "related" to an earlier claim made during Columbia's coverage period.

The district court concluded that the relevant terms of Columbia's policy did not require it to provide coverage for the disputed claim and instead held that Navigators was required to provide coverage. We disagree. As explained below, we conclude that the disputed claim is "related" to an earlier claim that Columbia was obligated to cover. And because the two claims are related, pursuant to the terms of Columbia's policy, we hold that Columbia is obligated to cover the disputed claim as well.

Therefore, we vacate the district court's decision.

## I.

Avertest is a company that conducts laboratory testing of biological samples, including hair and urine, for the presence of, among other substances, illegal drugs like methamphetamine and cocaine. Avertest purchased professional liability insurance from Columbia for the period of December 17, 2013 to May 1, 2022. Beginning on May 1, 2022, Avertest purchased its professional liability insurance from Navigators.

2

A.

The Insurance Policies

Relevant here is the insurance policy Columbia issued to Avertest for the policy period May 1, 2020 to May 1, 2021 (the "Columbia Policy"). The Columbia Policy was a "claims made" policy, which provided that Columbia:

> will pay all amounts up to [Columbia's] Limit of Insurance which the **Insured**[1] becomes legally obligated to pay as **damages** as a result of a claim arising out of an act, error or omission in the rendering of **professional services** provided that:
>
> A. such **claim** is first made against the **Insured** during the **policy period**, or during the **extended reporting period**, if applicable, and is reported to the **Insurer** in accordance with the section entitled **NOTICE OF CLAIMS AND POTENTIAL CLAIMS** of the **COMMON TERMS AND CONDITIONS**[.]

J.A. 72.[2]

The Columbia Policy defines a "claim" as,

> A. a civil proceeding in which **damages** because of injury to which this insurance applies are alleged . . . or
> B. a written or oral demand for **damages** alleging injury to which this insurance applies.

J.A. 56. And, importantly, the Columbia Policy contains a related claims provision that provides, "[a]ll **related claims**, whenever made, shall be considered a single **claim** first

---

[1] The Columbia Policy used bold typeface to denote defined terms within the policy. We do so here as well.

[2] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

made during the **policy period** in which the earliest **claim** was first made." *Id.* at 74. As defined in the Columbia Policy, "**related claims**" means, "with respect to the **Professional Liability Coverage Part**, all **claims** arising out of a single act, error or omission or arising out of **related acts, errors or omissions** in the rendering of **professional services**." *Id.* at 69. "**Related acts, errors or omissions**," in turn, means "all acts, errors or omissions in the rendering of **professional services** that are *logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision*." *Id.* (italicized emphasis supplied).

Taken together, these provisions dictate that related claims are those where the acts, errors, or omissions giving rise to the claims are "logically or causally connected by any common fact, circumstance, situation, transaction, event, advice or decision." J.A. 69. And related claims, "whenever made," are "considered a single **claim** first made during the **policy period** in which the earliest **claim** was first made." *Id.* at 74.

After Avertest's policy with Columbia expired, it switched insurers and purchased a claims-made policy from Navigators (the "Navigators Policy"). The Navigators Policy differs in only one relevant way from the Columbia Policy: it contains an exclusion, known as Exclusion Y. Exclusion Y provides that the Navigators Policy "does not apply to . . . any **Claim** that was reported to, or covered under, another program of insurance prior to this policy." J.A. 142.

4

B.

The *Gonzalez* Lawsuit

In February 2021, during the time period that Columbia insured Avertest, Justin Gonzalez and Darrell E. Tullock Jr. sued Avertest in the Circuit Court for the County of St. Louis, Missouri ("*Gonzalez*"). The case was removed to the Eastern District of Missouri on April 6, 2021. *Gonzalez v. Avertest, LLC*, No. 4:21-cv-00403-DGK (E.D. Mo. Feb. 23, 2022). The *Gonzalez* complaint, which was styled as a class action, alleged that "Avertest prioritized the speed in which it returned test results to its customers over ensuring that proper testing methods were followed." J.A. 216. *Gonzalez* further alleged that Avertest advertised itself as being "one of only 30 labs with accreditation by College of American Pathologists-Forensic Drug Testing (CAP-FDT) and accredited by the U.S. Department of Health and Human Services Clinical Laboratory Improvements Amendment (CLIA) and the Drug Enforcement Agency (DEA)." *Id.* at 218. But, according to *Gonzalez*, Avertest did not follow the quality control "guidelines established by the College of American Pathologists for forensic drug testing" (the "CAP standards"). *Id.* at 219.

By way of example, *Gonzalez* alleged that "[f]or an acceptable quality control scheme, samples with known concentrations, or 'quality controls,' should be tested alongside the patients' samples." J.A. 220. Those quality controls "should match the expected value within at least 20% for the entire run of patient samples to be scientifically acceptable." *Id.* But, *Gonzalez* alleged, "[o]n information and belief, [Avertest's] quality controls consistently failed, yet the test results were still reported. Moreover, technical

5

staff [at Avertest] would manipulate data to force quality controls to be within the acceptable range." *Id.*

*Gonzalez* also alleged that CAP standards require use of an "internal standard" -- "usually a drug with isotopes (elemental differences) distinct from the drug of interest." J.A. 220. "Internal standards are added to the sample at the beginning of the sample preparation process" so that the result can be "compared to an expected value." *Id.* If the result does not match the expected value of the internal standard, "the results of the patient specimen analysis should not be used." *Id.* In other words, "the internal standard ensures that the output numbers from the test are accurate, because the results should show the exact quantity of the internal standard placed into the test." *Id.* But according to *Gonzalez*, "[Avertest] did not follow the proper process as to internal standards . . . [and] used test results even where the results supposedly showed than an internal standard that was used did not exist." *Id.* at 221.

Additionally, *Gonzalez* alleged that Avertest had "serious problems with the calibration curves [it] used for its tests." J.A. 221. *Gonzalez* explained that "a quantitative test, also known as a confirmation, compares an unknown sample against a defined numerical range. The defined range is based on a calibration curve with five to seven data points. The calibration curve can give a definitive amount of a drug that is present in the sample." *Id.* That is, the calibration curve allows the results to not just identify a "positive or negative, but also 'how much.'" *Id.* "Prior to analyzing the patient specimens, the calibration curve should be analyzed for accuracy, including the coefficient of determination, which measures variance around the regression line of the curve." *Id.* But

6

according to *Gonzalez*, Avertest "frequently and consistently used calibration curves that failed to meet acceptance criteria and/or manipulated data, yet reported the patients' results anyway." *Id.* "One frequent method used to manipulate data was to pull calibration curve data from runs going back days to weeks in order to find a curve that was within the acceptance criteria. [Avertest] would then use this 'historical' curve, which is not an acceptable practice by the CAP guidelines." *Id.* at 221–22.

In sum, *Gonzalez* alleged that "[i]nstead of conducting its tests with proper internal standards, quality controls, and calibration curves, [Avertest] prioritized the speed of its results, consistent with its above claim that it gets results faster than other companies." J.A. 222. As a result of these errors, the *Gonzalez* plaintiffs alleged that Avertest reported false positive drug tests. And the *Gonzalez* plaintiffs alleged that such false positive drug tests caused them to lose unsupervised visitation with their children. These severe consequences resulted because the *Gonzalez* plaintiffs were required to take drug tests, which were sent to Avertest for testing, as part of ongoing legal proceedings related to their child custody rights.

Columbia paid for Avertest's defense in the *Gonzalez* litigation and ultimately settled with the individual plaintiffs. The *Gonzalez* lawsuit was dismissed on February 23, 2022, without ever being certified as a class action. Avertest's insurance policy through Columbia expired on May 1, 2022.

7

C.

The *Foulger* Lawsuit

Beginning on May 1, 2022, Avertest obtained professional liability insurance through Navigators. On May 18, 2022, just 18 days after Avertest switched insurance carriers, Avertest's counsel notified Columbia of an April 7 Facebook post by a user identified as "Hi D Hall," which stated that "[A] lawyer Richard S. Cornfield is filing a new federal Class Action against [Avertest] and he is seeking additional Plaintiffs from any state. If anyone is seeking a lawyer to sue [Avertest] for false positive drug tests and would like to join this suit you can contact the attorney . . . ." J.A. 515. Avertest's email to Columbia stated that given "Mr. Cornfield's past involvement in the *Gonzalez* class action litigation, we wanted to advise [Columbia] of the above information to provide notice of potential litigation . . . . [We] believe that a potential new suit is being actively pursued. We will, of course, advise your office when and if a formal lawsuit is filed." *Id.* Columbia responded that the Facebook post did not yet meet the definition of a "Claim" pursuant to its policy, but it advised Avertest to notify it immediately "[i]f a lawsuit is filed and it turns out that this is not a new claim, but rather a refiling of a claim that was previously reported to Columbia, such as [*Gonzalez*]." *Id.*

On August 22, 2022, eight new plaintiffs (represented by the same counsel as the *Gonzalez* plaintiffs) sued Avertest in the Eastern District of Missouri ("*Foulger*"). *Foulger v. Avertest, LLC*, No. 4:22-cv-878-SHL (E.D. Mo.). The *Foulger* complaint alleged that Avertest used improper collection and testing methods and ultimately reported false positive drug tests that caused the plaintiffs to suffer emotional distress, lose unsupervised

8

visitation with their children, and in some cases lose custody of their children. While the *Foulger* complaint was broader than the one in *Gonzalez*, it included the same basic allegations of Avertest's improper testing methods which did not align with CAP standards. Specifically, the *Foulger* complaint alleged *word for word* the same errors relative to quality controls, internal standards, and calibration curves as detailed above in the *Gonzalez* complaint. And, like *Gonzalez*, *Foulger* alleged that Avertest "prioritized the speed of its results" over compliance with CAP standards. J.A. 327.

On August 24, 2022, Avertest emailed Navigators notice of a new claim based on the *Foulger* complaint. The next day, on August 25, 2022, Avertest also notified Columbia that Foulger had been filed. Columbia denied coverage, explaining that because "the Policies issued to [Avertest] expired on May 1, 2022, there is no coverage for this claim." J.A. 516. For its part, Navigators accepted Avertest's tender of the *Foulger* claim "under a full reservation of all rights and defenses available under the [Navigators Policy]." *Id.* But, after further investigation, Navigators determined that Columbia should defend *Foulger* because it is related claim to *Gonzalez*. Thus, Navigators tendered the defense to Columbia, but Columbia again denied coverage.

D.

This Lawsuit

Navigators filed this lawsuit against Avertest and Columbia, seeking declaratory judgment that (1) it has no duty to defend Avertest in the *Foulger* lawsuit; (2) it has no duty to indemnify Avertest for any *Foulger* judgment; and (3) it has a right to reimbursement from Columbia for the *Foulger* defense.

9

All parties filed cross motions for summary judgment below.  Navigators sought summary judgment on all of its requests for declaratory relief, while Columbia sought a declaratory judgment that it had no duty to reimburse Navigators for the *Foulger* defense. Avertest simply sought coverage from either of the two insurers.

As it does here, the dispute below centered on whether the *Gonzalez* and *Foulger* lawsuits are "related claims," as that term is defined in the Columbia policy.  Navigators argued the two lawsuits are related, such that Columbia is required to pay for the *Foulger* defense because Avertest's claim for *Gonzalez* coverage was made during Columbia's policy period.  The district court denied Navigators' motion for summary judgment but granted Columbia's cross-motion.  The district court recognized that *Gonzalez* and *Foulger* "contain several similarities" such as "alleg[ing] the same general root causes for the same types of injuries," "alleg[ing] similar results," "alleg[ing] the same type of consequences," "rely[ing] on similar background facts and allegations," and "us[ing] overlapping language to describe the claims."  J.A. 519.  But, the district court found that there were also "substantial differences" between the two, *id.* at 520, and held that "[b]ecause of all these factual legal differences, the *Gonzalez* and *Foulger* lawsuits are not the same or related claims," *id.* at 523.  Therefore, the court determined that the two lawsuits were not related, Navigators was bound to provide coverage for *Foulger*, and Columbia was not required to reimburse Navigators for its defense in *Foulger*.

Navigators timely filed this appeal.

10

II.

We review de novo the district court's decision denying Navigators' motion for summary judgment and granting Columbia's cross-motion. *DENC, LLC v. Phila. Indemn. Ins. Co.*, 32 F.4th 38, 46 (4th Cir. 2022). In doing so, we apply the same standard as the district court. *Id.* Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

III.

On appeal, we must decide whether the *Gonzalez* and *Foulger* lawsuits are "related claims" as that term is defined in Columbia's policy. If they are, Columbia was responsible for defending Avertest in the *Foulger* litigation, and it must reimburse Navigators.

Like the district court, we apply Virginia law.[3] "In Virginia, an insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *Towers Watson & Co. v. Nat. Union Fire Ins. Co. of Pittsburgh*, 67 F.4th 648, 653 (4th Cir. 2023) (cleaned up). "If policy language is ambiguous, that ambiguity must be resolved against the policy's drafter, which 'is almost always the insurer.'" *Id.* (quoting *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019)). We must take care, however, to not "give up

---

[3] Where, as here, we have diversity jurisdiction over state law claims pursuant to 28 U.S.C. § 1332, "we apply controlling state law on settled issues and predict how the state's highest court would rule on unsettled issues." *Tederick v. LoanCare, LLC*, 168 F.4th 154, 165 (4th Cir. 2026) (citation omitted).

11

quickly on the search for a plain meaning by resorting to the truism that a great many words—viewed in isolation—have alternative, and sometimes quite different, dictionary meanings." *Erie Ins. Exch.*, 822 S.E.2d at 355. Instead, Virginia has instructed that policy language is truly ambiguous only where the "competing interpretations . . . are 'equally possible' given the text and context of the disputed provision." *Id.* at 356 (citation omitted).

Looking to the Columbia Policy's definition of "related claims," the relevant question here is whether the "acts, errors, or omissions" giving rise to the *Gonzalez* and *Foulger* claims are "logically or causally connected by *any* common fact, circumstance, situation, transaction, event, advice or decision." J.A. 69 (emphasis supplied). If we answer that question in the affirmative, then the two claims are related.

Just recently, this court considered similar policy language in *Navigators Ins. Co. v. Under Armour, Inc.*, 165 F.4th 171 (4th Cir. 2026). In *Under Armour*, Under Armour and its insurers disputed whether a 2017 SEC investigation into the company's accounting practices was "related" to several derivative and securities suits filed in 2016 over Under Armour's public statements about its future business prospects. 165 F.4th at 174. The related claims provision of the policy at issue there provided that "All Claims . . . that arise out of the same fact, circumstance . . . or Wrongful Acts that are logically or causally related shall be deemed one Claim." *Id.* at 181. Considering the plain meaning of the relevant terms, we determined that "two things are logically related when they are reasonably or rationally connected to or associated with one another." *Id.* at 183. And applying that definition, we held that the derivative suit claim and the SEC claim were logically related because they "were part of the same scheme." *Id.* at 186. Specifically,

12

we concluded that Under Armour's "accounting measures" that prompted the SEC action "covered up Under Armour's actual financial condition, allowing its officers to make the public statements" that underlied the derivative suits. *Id.* at 185.

We previously considered a similar definition of "related claims" as in the Columbia Policy -- "wrongful acts which are logically or causally connected by reason of any common fact . . . " -- and concluded that it was "expansive." *W.C. & A.N. Miller Dev. Co. v. Continental Cas. Co.*, 814 F.3d 171, 176 (4th Cir. 2016). There, we held that claims in one lawsuit involving an alleged breach of a real estate contract by not paying a fee and claims in a separate lawsuit alleging that the insured had taken steps to prevent the entity from collecting on the judgment were related. In our view, those claims "share[d] a common nexus of fact" because, but for the breach of contract, neither lawsuit would have taken place. *Id.* at 177.

Applying those precedents to the facts here, we hold that the *Gonzalez* and *Foulger* lawsuits were related claims pursuant to Columbia's policy. As explained above, both lawsuits alleged that Avertest reported false positive drug tests due to fundamental problems with its testing methodology: Its "quality control practices . . . did not meet guidelines established by the College of American Pathologists," J.A. 219–20 (*Gonzalez* complaint); 324–25 (*Foulger* complaint); it failed to "follow the proper process as to internal standards," *id.* at 221; 326; and there were "serious problems with the calibration curves [Avertest] uses for its tests," including manipulation of data. *Id.* at 221–22; 326–27. In other words, both lawsuits alleged that the same scheme (Avertest's prioritization of

13

speed over compliance with CAP standards) resulted in the same errors (false positive drug tests) and caused the same general harm (negative impacts on pending child custody cases).

It is immaterial that there were also differences in the two lawsuits -- different plaintiffs, different individual tests, different allegations as to errant collection practices, etc. -- because the policy does not ask whether two claims are more similar than different. Instead, the Columbia Policy specifies that two claims are related if the acts, errors, or omissions giving rise to the claims are "logically or causally connected by *any* common fact, circumstance, situation, transaction, event, advice or decision." J.A. 69 (emphasis supplied). And here, the errors giving rise to both *Gonzalez* and *Foulger* are more than just logically connected by any one fact. They are, instead, the very same errors in testing methodology. Therefore, we readily hold that the two claims are related.

And, because *Gonzalez* and *Foulger* are related claims, the Columbia Policy requires Columbia to provide coverage for *Foulger*. As noted above, the related claims provision specifies that "[a]ll **related claims**, *whenever made*, shall be considered a single **claim** first made during the **policy period** in which the earliest **claim** was first made." J.A. 74 (italicized emphasis supplied). Thus, because the first claim, *Gonzalez*, was made during Columbia's 2020–2021 policy period, *Foulger* is treated as part of that single claim, made during that same policy period.

Columbia tries to avoid this outcome by arguing that the claims-made nature of its policy precludes coverage because the *Foulger* claim was not made and reported to it during the policy period. But this argument seeks to rewrite the policy by removing "whenever made" from the related claims provision. If Columbia wanted to limit related

14

claims to those individually made during the policy period, it could have done so. But it did not. Instead, the policy plainly allows for related claims coverage by treating the second claim, "*whenever made*," and the first claim together as "a single **claim** first made during the **policy period** in which the earliest **claim** was first made." J.A. 74. The *Gonzalez* claim was made and reported to Columbia during the 2020–2021 policy period, and Columbia rightly provided coverage for it. Because *Foulger* is a related claim, it is treated as a single claim together with *Gonzalez*. Thus, under the policy, Columbia must treat *Foulger* the same as *Gonzalez* and consider the *Foulger* claim made and reported to Columbia when *Gonzalez* was -- during the coverage relationship.

## IV.

Because *Gonzalez* and *Foulger* are related claims, Columbia -- not Navigators[4] -- was obligated to provide Avertest's defense against the *Foulger* lawsuit. The district court's contrary decision is vacated, and the case is remanded for entry of judgment consistent with this opinion.

*VACATED AND REMANDED*

---

[4] As explained above, Exclusion Y in the Navigators Policy provides that Navigators does not provide coverage for any claim that was "covered under[] another program of insurance prior to this policy." J.A. 142.